ROBERT LEE HOLLAND, Appellant, v. THOMAS C. MARTIN ET AL.—No. 39819.—198 S. W. (2d) 16.

Division Two, November 11, 1946.

Rehearing Denied, December 9, 1946.

768

*Cyril B. Brown* and *John R. Baker* for appellant.

*W. C. Maughs* and *Don C. Carter* for respondents.

BARRETT, C.—The appellant, Robert Lee Holland, seeks to have himself declared the adopted son of Joseph Bailey Martin. If he is successful he inherits Bailey Martin's $40,000 estate to the exclusion of the respondents, Martin's brother, a sister and nieces and nephews.

In brief outline the facts are that Bailey and Mary Martin were married in 1895 and lived on a farm, a part of the Martin's ancestral land, near Williamsburg in Callaway County. Lee Holland's mother was Mrs. Martin's half sister. Mrs. Holland died in Kansas City in 1902 and her husband, Lee's father, Cal Holland, brought Lee to the Martin farm home after his wife's funeral at Sedalia. Lee was then a child five or six years of age. He lived in the Martin home from 1902 until after his marriage in 1916. And sometime after he was married Mr. Martin built a house for him on the farm and Lee and his family of ten children lived there until 1936. In 1936 Lee moved away and at the time of the trial lived in Kansas City, though some of his children were often in the Martin home or in the house built for Lee after 1936. Mrs. Martin died in 1937 and Lee received one seventh of her $1,272.88 estate as a half nephew. Mr. Martin died in 1944 and this suit followed in 1945.

Throughout the years Lee's father occasionally wrote to him and to the Martins but except for one brief visit, possibly in 1903, never saw Lee after leaving him with the Martins in 1902. From 1902 until 1916, while Lee was a member of the Martin household, the Martins clothed him, sent him to school, took him to church and, in short, treated him as a natural father and mother would treat a son, so much so that some thought he was their son. The Martins had no children. Lee called them, as many did, "Uncle Bailey" and "Aunt Mary" and they usually called him "Lee." As soon as he was old enough he began doing farm work and by 1916, apparently, did most of the work required on a stock farm, for which, his wife says, he received no pay. However, Lee and Mr. Martin seem to have been partners in raising certain stock. After his marriage he continued to do the farm work though he lived in the house Mr. Martin built for him. About that time Mr. Martin may have given him forty-seven acres of land, but whether he did is not made certain by this record. In addition to farming he did some neighborhood blacksmithing and eventually began driving a truck and doing some mechanical work.

The theory of the appellant's case, as stated in his brief, is "upon an agreement which he claims that Joseph Bailey Martin and his wife, Mary Martin, made with Calohil M. Holland, plaintiff's father, when plaintiff was a child of approximately 5 years of age" (Remmers v. Remmers (Mo.), 239 S. W. 509) and "the acts, admissions and conduct of Joseph Bailey Martin and his wife with reference to the child, clothing him, educating him, taking him to church, on shopping trips and visits, and receiving the reciprocal benefits of his companionship, love and affection, and the fruits of his labor over a period of approximately thirty four years." Holloway v. Jones (Mo.), 246 S. W. 587.

In support of his theories the appellant relies upon the outlined facts and the evidence, largely from Lee's relatives and one or two boyhood friends and neighbors, that Mr. Martin called him "the boy," once said "son," or in 1911 said "take care of our son," or as the fact appeared that "Lee was like their own son." One witness said that Mr. Martin once told him that he had the boy and "was going to make him hisn." Others said that Mr. Martin had remarked that Lee was "to have everything" when he died or, in substance, that what we have belongs to Lee.

However, these facts and circumstances do not prove an agreement on the part of the Martins with Cal Holland in 1902 or 1903 to adopt Lee. They may constitute corroborating and supporting circumstances but they do not establish an agreement, nor do the facts, as shown by acts, conduct and admissions indubitably lead to the conclusion of an agreement in a consensual sense. Kay v. Niehaus, 298 Mo. 201, 206, 249 S. W. 625, 626. Lee's wife said that Aunt Mary once told her, in Mr. Martin's presence, that "his mother died, and they didn't have any children and she wanted him and Bailey wanted him too, and they decided they would take him and raise him as their own." Lee's wife also testified that when she was about fourteen Aunt Mary said: "His mother was my half-sister. We are going to raise him as our own, and sometime he will inherit what we have got." She testified that she had never heard either Uncle Bailey or Aunt Mary say that they had adopted Lee but she said that as Mamie Martin lay on her deathbed, in 1934, Mamie said to Aunt Mary, "Mary, you and Bailey take out adoption papers on Lee" and Aunt Mary said, "All right, Mamie, we are going to do it just as soon as I get Bailey in the notion of going to Fulton, we will take care of that." But, as we have said, this evidence, the credibility of which is better determined by the trial judge, (Taylor v. Hamrick (Mo.), 134 S. W. (2d) 52) whatever else it may show does not necessarily prove an agreement in 1902 by the Martins to adopt Lee. Kidd v. St. Louis Union Trust Co., 335 Mo. 1029, 1039, 74 S. W. (2d) 827, 831; Benjamin v. Cronan, 338 Mo. 1177, 93 S. W. (2d) 975. It certainly does not prove an agreement by Bailey Martin with Cal Holland in

1902. Niehaus v. Madden, 348 Mo. l. c. 779, 155 S. W. (2d) l. c. 145. Compare: Fisher v. Davidson, 271 Mo. 195, 195 S. W. 1024; Craddock v. Jackson (Mo.), 223 S. W. 924.

As to the second theory presented in the appellant's brief, we pass the question of whether there must in fact be some evidence of an agreement to adopt, in addition to the subsequent circumstances of apparent performance of the oral agreement, or some attempt to comply with some formal, recognized ▉ method of adoption (Kay v. Niehaus, 298 Mo. l. c. 214, 249 S. W. l. c. 629; Niehaus v. Madden, 348 Mo. l. c. 777, 155 S. W. (2d) l. c. 144) and assume that the status of adopted child may be established as a fact from the mere circumstances of taking a child into one's home as his own, voluntarily assuming the status of a parent, giving and receiving affection and companionship and securing the services of the child,—or, as it is sometimes denominated, an adoption by estoppel. Shelp v. Mercantile Trust Co., 322 Mo. 682, 695, 15 S. W. (2d) 818, 825. In this connection the appellant stresses the facts and circumstances we have mentioned and contends that his case so fulfills all the requirements of the doctrine that we should reverse the finding of the trial court and decree him to be Bailey Martin's adopted son. It may be frankly stated that in many respects his case is fairly comparable to Holloway v. Jones (Mo.), 246 S. W. 587 and yet it does not follow that he is entitled to a decree.

It is true that Bailey Martin need not have used the word "adopt" or have changed Lee's name from Holland to Martin to indicate that he intended to or had adopted Lee. Taylor v. Coberly, 327 Mo. 940, 38 S. W. (2d) 1055, 1061; Ahern v. Matthews, 337 Mo. 362, 376, 85 S. W. (2d) 377, 383-384. As it is with other auxiliary rules employed in these cases, they are no more conclusive against adoption than the use of the alleged parents' name or their referring to the child as "their boy" or even as "their adopted boy" is conclusive of an adoption. Stillman v. Austin (Mo.), 148 S. W. (2d) 573; Furman v. St. Louis Union Trust Co., 338 Mo. 884, 92 S. W. (2d) 726. Depending on the circumstances, however, they may become important aids—even decisive, in determining whether in fact there was an adoption or an intent to adopt. The auxiliary rules are skillfully employed and their effect contrasted in Benjamin v. Cronan, 338 Mo. 1177, 93 S. W. (2d) 975. But in the instant case, on this theory, the overwhelmingly persuasive fact of Bailey Martin's holding Lee out as and representing him as his son is not made to appear by convincing evidence. Annotation 142 A. L. R. 84, 102, 122. The compelling force of the circumstance of holding out and representing a child as one's son is illustrated by Drake v. Drake, 328 Mo. 966, 43 S. W. (2d) 556. Here the evidence reveals more of a consciousness of a sense of duty or obligation on the part of Mr. Martin to leave Lee his property or some part of it in view of their past relationship rather than any intention

of adopting him or representing him as his son. But Mr. Martin did not believe in wills and the motive or intention to in some manner recompense from a sense of duty does not take the place of evidence compelling the conclusion of adoption. Stillman v. Austin, supra.

All the facts and circumstances could be weighed, tested and contrasted in the light of the auxiliary rules but even so a most favorable construction of the appellant's evidence is not necessarily consistent alone with adoption. Benjamin v. Cronan, 338 Mo. l. c. 1186, 93 S. W. (2d) l. c. 979. In any event, in trying the case anew as we have, we cannot say that the appellant's evidence is so clear, cogent and convincing that we may confidently assert without doubt that Bailey Martin in fact adopted Lee. Barnett v. Clark (Mo.), 252 S. W. 625, 628; Stillman v. Austin, supra; Benjamin v. Cronan, supra. We agree with the trial court's finding, to which we give deference, that Lee Holland was not adopted by Mr. Martin. Niehaus v. Madden, 348 Mo. l. c. 778, 155 S. W. (2d) l. c. 145.

Accordingly, the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.