This suit in equity was brought by R.R. Thomas, as plaintiff, against William B. Milfelt, as defendant, for an accounting of the affairs of a partnership and for the appointment of a receiver to take charge of the partnership assets. The suit was originally filed in the Circuit Court of Jefferson County, Missouri, on October 22, 1947, but on application of defendant was taken on a change of venue to St. Francois County, Missouri, where it was tried before the court on May 22, 1948, on the amended petition of plaintiff and the amended answer of defendant. The court found the issues in favor of defendant and against plaintiff, and rendered judgment in accordance with such finding, and ordered that the partners pay into the registry of the court to the order of the Circuit Clerk the balance of $648.60 then on deposit in the Crystal City State Bank, and after payment by the Clerk of all costs, from the sum so deposited, that the Clerk pay half the remainder to plaintiff and his attorney, and half to defendant and his attorney.
Plaintiff alleged, among other things, in his amended petition that defendant had been in active charge of all the partnership business and had failed and refused to account for the bank account, commissions due from sales of automobiles, refunds of wages and "numerous and divers other assets." In his amended answer defendant, after a number of specific denials, alleged that he had made a full and complete accounting and had a complete settlement with plaintiff of all the partnership assets, with the exception of the bank deposit, and denied that he was indebted to plaintiff on account of the operation of said partnership business or any matter arising therefrom.
At the beginning of the trial defendant in open court consented that the court should enter an order that plaintiff was entitled to an accounting, and that the court should proceed on that basis, subject to any defense that respondent had available and "without any defense which we have that there has been a full accounting."
The evidence shows that plaintiff and defendant entered into an oral contract of partnership on March 15, 1946, for the operation of an automobile sales and repair business. The partnership continued in business until October 15, 1946, or the last of October, 1946, when it was dissolved. The precise date of the dissolution is not clearly shown in the record. Each partner agreed to furnish one-half of the capital of the partnership and to receive one-half of the profits. Defendant was to devote his full time to the business as manager for which he was to receive $225 per month. Plaintiff's connection with the business was in an advisory and consulting capacity only. Plaintiff gave $4000 in cash as his contribution to the capital of the partnership. Defendant gave the sum of $3568.40 in cash, $79.80 representing expenses incurred by him for the partnership, $36.80 representing a bill for labor, and $375 representing back salary due him, making a total of $4060 as his contribution to the capital of the partnership. Defendant took charge of the business and managed it from March 15, to the last of October 1946. *Page 361 
On March 22, 1946, defendant procured for the partnership from the Berry Motor Company of St. Louis, Missouri, a franchise to sell Packard automobiles. On June 1, 1946, a garage and a showroom were procured for the use of the partnership. On or about October 15, 1946, the franchise from the Berry Motor Company was cancelled and at that time an inventory of the partnership assets was made and the business was closed and sold to Mothers-head Motor Company about the last of October, 1946, for the sum of $3300, which amount the two partners divided equally on the day of the sale.
During the period of the operation of the partnership business defendant procured from the Berry Motor Company for the partnership three Packard automobiles and sold them to the following persons; one to Millard Stolzer, one to V.S. Robinson and the third to Gentry Politte. At about the time of the sale of the business to Mothershead Motor Company defendant procured from the Berry Motor Company another Packard automobile which was consigned to Mothershead Motor Company but delivered direct to defendant. During said period defendant also received for the partnership various amounts of motor oil, tires and inner tubes.
Plaintiff contends that defendant failed to make a proper, full and sufficient accounting, and should have been required by the court to do so with respect to the following items (a) additional profit on the Packard automobile sold to Robinson, (b) commission on the Packard automobile that defendant procured for himself, (c) on certain tires, (d) on motor oil, (e) on certain government checks received through John Maier.
Defendant testified that on August 1, 1946, he sold to Robinson a Packard automobile and the accessories accompanying it; that the cost of these items was $1565.85; that Robinson paid him $1882.67 for the automobile and the accessories which showed a profit of $316.82. Plaintiff concedes that defendant accounted for this profit. On cross-examination defendant testified that Robinson was a building contractor and that he had an arrangement with Robinson whereby defendant put Robinson at the head of his list to sell Robinson an automobile in return for Robinson putting defendant at the head of Robinson's list for the construction of two rooms and a basement of defendant's house; that he, defendant, considered it worth $200 to him to get this arrangement and that a few days after the sale of the automobile to Robinson he, defendant, gave plaintiff $100 and explained to plaintiff the deal he had made with Robinson; that plaintiff at that time said he was satisfied with the deal. In explaining how he arrived at the amount of $200 in the above deal, defendant stated that was the price which a St. Louis contractor said he would charge as a bonus to start such work immediately, and that he gave plaintiff one-half thereof as his share. Plaintiff concedes that defendant did give him the $100.00 mentioned in connection with said deal but contends that defendant sold or could have sold the car to Robinson for $2500. Defendant testified that he did not sell the car for $2500 and denied that he had ever told plaintiff he had done so. Defendant further testified that he talked to plaintiff before making the sale of the automobile to Robinson and told plaintiff that he wanted to make it and that plaintiff insisted that the car should be sold to a party in Chicago who would pay $2500 for it, but that he, defendant, wanted to sell it to a local man and would not agree to make the sale to the Chicago party. The evidence shows that on August 2, 1946, defendant increased his contribution to the capital fund of the partnership by a $300 payment in cash.
Concerning the sale of the automobile to Robinson, plaintiff testified that defendant had said he got $2500 for the car. In this connection plaintiff testified: "I was in there one afternoon and Mr. Robinson was there and said he could buy a Buick for $2950, and in he come. I left, and in a couple of days Bill (referring to defendant) came in and give me one hundred dollars I and said he got twenty-five hundred dollars. I thought he took a hundred and put the rest in the bank, but he didn't" (Words in parenthesis ours.) *Page 362 
On cross-examination plaintiff testified that two or three days before defendant sold the car to Robinson he told plaintiff he could sell it for $2500 and that two or three days later he ran in and said: "Here is one hundred dollars. I got twenty-five hundred for it." Plaintiff testified that from this happening he concluded that defendant had given him $100 and took $100 himself and put the rest in the bank; that he never looked at the deposit book or the other books of the partnership; that he was not satisfied with the deal; that assuming defendant sold or could have sold the Robinson car for $2500, defendant should account for an additional sum of $417.32.
It will be noted that plaintiff did not produce any direct evidence that defendant actually received $2500 in the sale of the Robinson car. Plaintiff merely testified that defendant had told him that he received said amount. Defendant not only specifically denied that he made any such statement to plaintiff, but he went further and testified that he told plaintiff that the franchise of the partnership from the Berry Motor Company would be cancelled if the car was sold in Chicago, which was not only outside the territory that the partnership firm was authorized to serve, but was in another state. It is argued by plaintiff that defendant's contribution of $300 to the partnership shortly after the sale of the Robinson car warrants the conclusion that defendant received $2500 from said sale. We do not agree with that view. Defendant testified positively that said sum of $300 and all other contributions made by him to the partnership came out of his own personal funds. We believe there is no substantial evidence to warrant the conclusion that defendant received for the sale of the automobile in question any more than he received and accounted for to plaintiff.
The record shows that most of the important and vital testimony with respect to the partnership transactions was given by plaintiff and defendant as witnesses. Although the parties in their testimony were in agreement with respect to many of the partnership transactions, there are some important points in which they were in direct conflict with each other. This being a suit in equity, it is the duty of this court to review the entire record and reach its own conclusions on the evidence. Nevertheless, there is a well recognized and long established rule that in such a suit where there is conflict in the oral testimony of the parties or witnesses the appellate court should accord due deference to the findings of the trial court. This rule is based upon the view that the trial judge is in the best possible position to weigh such conflicting testimony by virtue of the fact that he has an opportunity to observe the demeanor of the parties and witnesses while they are on the stand under oath giving their testimony. Holland v. Martin et al., 355 Mo. 767,198 S.W.2d 16; Steinhoff v. Kinder, Mo.Sup., 186 S.W.2d 600; Botto v. James, Mo.Sup., 209 S.W.2d 256. In the case at bar, aside from the rule requiring us to accord due deference to the trial court's findings, our own independent consideration of the evidence convinces us that the trial judge reached the right conclusion on the matter of the sale of the automobile to Robinson.
Plaintiff's next contention is that the court erred in finding that the defendant was not required to account for a profit on the automobile he received through the Mothershead Motor Company. Plaintiff argues that the partnership was to receive this car at cost as part of the consideration of the sale of the firm's business to Mothershead and that it is immaterial when defendant got the car. Here again, we are confronted with a conflict in the testimony of the two parties. Plaintiff's argument is based upon the assumption that his version of this transaction must be accepted as the true one. We are not permitted to indulge in such assumption. The evidence shows that the automobile received by defendant was consigned to the Mothershead Motor Company on October 29, 1946, and that defendant paid for it by his personal check dated October 31, 1946, payable to the Berry Motor Company. Defendant himself testified that the partnership had nothing whatsoever to do with the purchase of said automobile. This contention of defendant *Page 363 
appears to be borne out by the fact that the automobile was sold after the franchise of the partnership had been cancelled by the Berry Motor Company. Furthermore, on cross-examination, defendant emphatically and specifically denied the contention of plaintiff that the partnership was to receive an automobile at cost after the assets had been sold to Mothershead. Plaintiff testified that the Mothershead Company was to furnish to the partnership at wholesale the first automobile received by Mothershead and that he, plaintiff, "thought" that defendant would turn in the profit to the partnership. On cross-examination, plaintiff admitted that he had signed the agreement for the sale of the property of the partnership to Mothershead that there was nothing in the agreement which provided that plaintiff was to receive any profit on the automobile that defendant was to receive.
Plaintiff further testified that he had never said anything to defendant about splitting the commission on that transaction. We agree with the view of this transaction taken by the trial judge, namely, that plaintiff "assumed that he would receive half of the difference from the defendant between the cost price and the list price." We also agree with the further finding of the trial judge that "Defendant did not agree to such an arrangement and did not pay plaintiff anything on this account." There is no doubt that the relationship inter sese of the members of a partnership is a fiduciary one and that partners must exercise the utmost good faith in all their mutual relations, as plaintiff contends. Furthermore, the cases cited by plaintiff on this point do so hold. However, we are of the opinion that the facts disclosed by the evidence herein do not warrant the conclusion urged by plaintiff. On the contrary, the trial judge being confronted with the necessity of weighing the evidence and determining the credibility of the parties as witnesses reached the conclusion, which is amply supported by testimony in the record, that defendant did exercise the utmost good faith in his dealings with plaintiff. From our own consideration of the record, we believe that to be the correct conclusion.
Plaintiff's next complaint is that the court erred in finding that defendant made a proper accounting on the two tires which defendant claimed to have sold to some unknown persons. The evidence shows that the partnership received 18 tires. Defendant's testimony was that these tires were disposed of to persons whom he named. He also stated the price that he received for such tires. It appears that four of the tires were included in the sale of the partnership assets to Mothershead. Defendant frankly stated that he was unable to give the name of the party who purchased two of the tires, but said that the two tires were sold for $35.30, and that the money received therefor was placed in the cash fund. The trial judge specifically examined defendant at length with respect to the sale of said two tires and asked himself he personally had received any portion of such money. Defendant stated that he had not. Plaintiff did not offer any testimony to show that the tires in question were disposed of in any other manner than that testified to by defendant. The trial judge who observed defendant's manner and heard his testimony appears to have concluded that in the absence of anything specific to the contrary, defendant's explanation with respect to the two tires was true. In this connection the trial judge had the benefit of the testimony of a Mr. Edmonds, an auditor, who had made an audit of the partnership books on behalf of plaintiff, and who testified as a witness for plaintiff. We think it is unnecessary to prolong this opinion to give a resume of the auditor's testimony. It is sufficient to say that the auditor appears to have found that defendant accounted for all of the tires that belonged to the partnership. On this record we cannot make any other finding than that made by the trial judge.
Plaintiff's next point is that the court erred in finding that defendant should not account for any motor oil in the face of the court's own finding that 24½ gallons of oil were not accounted for. Plaintiff further contends that under the evidence at least 33¾ gallons of oil were not accounted for.
Defendant testified that he did not remember the names of the parties to whom *Page 364 
he sold 21¾ gallons of oil. It appears from the evidence, however, that oil was given to the owners of Packard automobiles for advertising purposes and it can be reasonably and properly inferred from the evidence that of all the oil purchased by the partnership, that portion thereof which was not sold and accounted for in that manner was used in the promotion of the business of the partnership. The testimony of Mr. Edmonds, the auditor, with respect to the oil items was to the effect that he was able to account for all of the oil purchased by the partners except 7 gallons. There is no no evidence whatsoever which shows, or from which it could be inferred, that defendant any personal profit from the sale of oil or that he converted any of it to his own use. The trial judge in his memorandum opinion, referring to the oil supply of the partnership, said: "It is as reasonable to conclude that it was sold or used in the regular course of the operation of the business as to conclude that defendant converted or embezzied it." We are satisfied that the evidence in the record shows that the trial judge reached the right conclusion on this item.
Plaintiff next contends that the court erred in finding that defendant accounted for the proceeds of all Government checks issued to John Maier and that the weight of the evidence shows that the defendant did not account for $135 of the proceeds of two of such checks. It appears from the evidence that the partnership employed John Maier as a mechanic at a salary of $60 per week with extra pay for overtime, and that Maier worked from June 2 to October 14, 1947. Maier was an ex-service man and received from the United States Government $20 per month toward the payment of his salary. The evidence shows that the checks of the United States Government payable to John Maier arrived late, in which instances the partnership advanced to Maier, at his request, the amount of such checks. When Maier received his Government pay checks, he turned them over to defendant to repay the advancements thus made to him by the partnership. One check for $189.00 which had been received by Maier from the Government was endorsed to the partnership and applied on advancements which had been made to him on his wages. This particular check was deposited in the bank to the credit of the partnership. The evidence also shows that other checks of the Government received by Maier were turned over to defendant, but were endorsed back to Maier in payment of wages due him. The process was that Maier delivered the checks as they were received by him to the defendant in instances where the partnership had previously advanced the amount of such checks to Maier and when such checks were received defendant, acting for the partnership, endorsed them back to Maier in payment of wages then due Maier, except in the instances noted.
It is true that defendant on cross-examination, with respect to the Government checks and the payment of wages to Maier, frankly stated that he "had a record" of such transactions but that he was "not sure that that is accurate" and that he was trying to testify from memory because he did not have a record of every payment made to Maier. However, it appears that defendant made no pretense of being an accountant or that his records and books were kept in a manner that a regular bookkeeper or accountant would keep them, but we believe from the evidence shown that the trial judge was warranted in finding that defendant did not profit personally and did not keep for his own use any of the Government checks. Maier himself, although called as a witness for plaintiff, testified that he was paid his salary sometimes in cash, and sometimes by check, and that such payments were for legitimate work he had done for the partnership. He further stated that defendant did not pay him for more than he had coming to him; that he was paid for work which he had honestly performed for the partnership. We find that the evidence fully warrants the conclusion that defendant made a full accounting to the partnership in connection with the payment of Maier's wages and the disposition of the Government checks payable to Maier.
There is no evidence whatsoever to show that plaintiff, during the period when these transactions with Maier were happening, made any objections concerning defendant's *Page 365 
method of keeping account of the partnership affairs, and it was not until after the dissolution of the partnership that plaintiff made any complaint. Plaintiff does not claim that the books or accounts were concealed from him or that they were falsified. There is nothing to show that plaintiff did not have full and complete access at all times to all the partnership's papers, books and accounts. We hold against plaintiff on this point.
It appears from the evidence that at the time the partnership business was sold to the Mothershead Motor Company, the partnership had a deposit in the Crystal City State Bank amounting to $111.62. Thereafter, defendant received from the Berry Motor Company a refund of $524.40, representing a deposit which the partnership had made with the Berry Motor Company, and the sum of $12.53 due the partnership for work done for a customer. Defendant deposited in the bank heretofore mentioned to the partnership account the last two mentioned sums, making the total of the account in the bank to the credit of the partnership $648.60 after the partnership was dissolved. Defendant did not make distribution of said funds and when asked at the trial why he did not do so said: "It takes two to divide it, and I did not feel that I had a right to go take part of it. I would rather leave it in the bank until it was settled by the Court." We are of the opinion that although the evidence shows plainly that defendant was not an experienced bookkeeper or accountant, it nevertheless also shows that he was straightforward and frank in all of his dealings with the partnership funds and with plaintiff, and did make full disclosure and actually account to plaintiff for all the partnership affairs entrusted to him.
It is true, as plaintiff contends, that the case of Filbrun v. Ivers, 92 Mo. 388, 4 S.W. 674, holds that in a partnership matter where the proof is confusing and leaves doubt about claims between a partnership and its partners, such doubts should be resolved in favor of the partnership and against the individual partner. However, we believe that the Filburn case has no application to the case at bar for the reason that aside from plaintiff's assumptions, there are no real or substantial doubts to be resolved herein. The evidence in this case is sufficient to show that defendant did not refuse to account but, on the contrary, fully accounted to plaintiff for the partnership business. Furthermore, it is not amiss to say that the evidence also shows that the partnership was actually indebted to defendant for wages which he earned but which were never paid to him. It is not necessary to discuss that matter further, however, because defendant did not ask for any such relief.
We find, as the trial judge in his memorandum opinion pointed out, that neither partner lost any of his capital investment. The amount of $648.60 remaining on deposit in the bank is to be equally divided between them. The sum already divided and that to be divided taken together amount to $8237.58, on a total capital contribution of $3060, which shows that each partner will have had a small profit for his experience.
It is true that the partnership during its existence sustained certain small losses under the management of defendant. However, the general rule as to partnership losses is stated in 47 C.J., page 792, Section 234, as follows: "Partnership losses occasioned by the conduct or poor judgment of one partner will not be charged against him, but will be borne by the firm, in the absence of fraud, culpable negligence, or bad faith on his part." A careful review of the evidence in this record fails to disclose anything from which it could be inferred that any of the losses of the partnership were the result of fraud or culpable negligence or bad faith on the part of defendant.
We find no error in the action of the trial court and its judgment should be affirmed. It is so ordered.
ANDERSON, P.J., and HUGHES, J., concur.
 *Page 836