# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3552WM

_____

| | |
|---|---|
| Lee Turner, | * |
| | * |
| Appellant, | * |
| | * On Appeal from the United |
| v. | * States District Court |
| | * for the Western District |
| | * of Missouri. |
| John H. Ferguson; | * |
| Huntington Ridge, L.L.C., | * |
| | * |
| Appellees. | * |

_____

Submitted: April 17, 1998

Filed: July 10, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, LOKEN, Circuit Judge, and PRATT,[2] District Judge.

_____

RICHARD S. ARNOLD, Chief Judge.

_____

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

[2]The Hon. Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

Lee Turner, a limited partner in Liberty Industrial Park, sued John Ferguson, the general partner, alleging that Ferguson had violated his fiduciary duty. Turner claims that Ferguson placed his own interests above those of the partnership when he arranged the sale of a large parcel of the partnership's property to a land development company of which he owned half. The District Court granted summary judgment in Ferguson's favor. We reverse and remand for trial.

I.

Liberty Industrial Park ("Liberty") was formed in 1983 to hold land for sale to developers. Turner, as a limited partner, owns 36 per cent. of the partnership, and Ferguson owns 10 per cent. as the sole general partner, as well as 6.75 per cent. as a limited partner. The remaining interests in the partnership are held by others. Liberty is governed by an agreement that requires the general partner, who has the authority to control the business and assets of the partnership, to exercise his responsibilities in a fiduciary manner. The agreement can be amended with the written approval of a simple majority of the limited partners' interests, but an amendment must have the approval of all partners before the liabilities, obligations, or responsibilities of the general partner may be reduced. Ferguson's real estate brokerage firm was the listing agent for Liberty's property, and he was entitled, under the partnership agreement, to receive a fee of one per cent. of the proceeds of any sale of partnership property.

Following the collapse of two different proposals for the sale of the land, Ferguson wrote to the limited partners, expressing his interest in buying the land, and asking for their approval. With the exception of Turner, all the limited partners provided their written consent. Sometime later, Ferguson wrote Eldon Boisseau, one of the limited partners, who was also his brother-in-law and Turner's law partner, to find out why Turner hadn't responded to Ferguson's letter. Boisseau responded that Turner's position was "reasonably favorable," but that Turner wanted the partnership to receive at least $750,000 for the land. Ferguson hired an attorney in Turner's firm

to prepare a sales contract and to secure the limited partners' approval. The contract set the sales price at $10,000 an acre, or $755,000 total, with payments to be made in four installments, and the consent form set forth the partners' approval of both the contract and Ferguson's participation in the deal. The buyer was to be Steve Havens, a Ferguson associate, although Huntington Ridge, L.L.C., a land development company owned equally by Havens and Ferguson, would later replace Havens as the buyer. All the partners except Turner signed the consent form. Turner told Boisseau that he had no objection to the sale, but that the entire purchase price would have to be paid at closing. Turner's consent form was signed by Boisseau as "Lee Turner by Eldon Boisseau," although Turner claims he did not authorize Boisseau to sign on his behalf. The contract required the closing on the first installment to occur by December 9, 1995, or the contract would be terminated. The closing did not occur in December.

The following spring, Turner approached Dick Stephens, a friend in the real estate business, to determine the land's value. In mid-May, an entity called the Highlands Group offered to purchase the land for $12,500 an acre. The proposal, which provided that Highlands had about 90 days after acceptance of the contract to abandon the sale, was circulated among the partners. In the meantime, the contract between Liberty and Steve Havens was amended to extend the closing date. On June 17, an associate of Ferguson wrote Stephens to say that Ferguson was the exclusive agent for the property, and that a pending contract was expected to close the next day. On June 27, Turner wrote the other partners of his opposition to a sale of the land to Havens, saying that he thought Ferguson had a conflict of interest in selling the property to himself. On July 3, the Highlands group raised its offer to $850,000, almost $100,000 more than the original contract between Liberty and Huntington Ridge.

At a meeting on July 16, an attorney hired by Ferguson to advise the partners proposed that an amendment to the partnership agreement be drafted to permit the limited partners to vote on a transaction presented by the general partner that might be a potential or actual conflict of interest. The attorney drafted such an amendment,

-3-

which provided that such a transaction would not be deemed a fraudulent transfer or a breach of the general partner's fiduciary duty of loyalty to any of the limited partners if limited partners holding a simple majority of the limited partners' interests provided written approval within 90 days after the proposal had been made. The amendment was apparently adopted by a vote of limited partners holding a majority of the interests of the limited partners. Turner did not vote for the amendment.

The partners also discussed at this meeting the two offers, and decided that the partnership should sell the property to Huntington Ridge, according to Ferguson, so long as Huntington Ridge agreed to pay the entire purchase price at closing. On August 1, Liberty and Huntington Ridge executed a second contract for the sale of the property, which stipulated that the purchase price would be paid at closing, and that Ferguson would waive all brokerage commissions from the sale. On October 2, Liberty and Huntington Ridge closed on the sale of the land, Ferguson representing Liberty and Steve Havens representing Huntington Ridge. The purchase price was $755,000. The following spring, a developer offered Huntington Ridge $1,030,000 for the property, although, as a result of this lawsuit, the proposed sale did not take place.

In his complaint, Turner alleged that Ferguson violated his fiduciary duty as general partner when he sold the property to an entity of which he was a half-owner. The District Court held otherwise, and granted summary judgment in favor of Ferguson and Huntington Ridge. Turner also alleged that the amendment to the partnership agreement, which he did not vote for, was invalid. The District Court rejected Turner's request to have the amendment declared invalid, holding that the issue was moot since the Court had held as a matter of law that Ferguson had not breached his fiduciary duty. Under the same reasoning, the Court denied Turner's motion for the imposition of a constructive trust, as well as his request for an accounting.

## II.

Ferguson owed, as general partner, a fiduciary duty to his limited partners under the terms of Liberty's partnership agreement and also under Missouri law.[3] Section 8.02, Agreement of Limited Partnership (J.A. 144); Chapman v. Dunnegan, 665 S.W.2d 643, 647 (Mo. App. 1984) (citing, e.g., Thomas v. Milfelt, 222 S.W.2d 359 (Mo. App. 1949)). In Missouri, the fiduciary relationship of a director or officer of a corporation does not necessarily prevent the director from doing business with the corporation at a profit. Scott v. Potter Plumbing & Heating, Inc., 596 S.W.2d 492, 494 (Mo. App. 1980). A director may conduct personal transactions with his corporation if he can prove that he has not gained unconscionable or secret profits in the transaction and that he has dealt openly, honestly, and fairly with the corporation and the stockholders. Simpson v. Spellman, 522 S.W.2d 615, 619-20 (Mo. App. 1975) (citing Ramacciotti v. Joe Simpkins, Inc., 427 S.W.2d 425, 431-32 (Mo. 1968)).

The District Court held that "[i]t is clear from the facts of the case that Ferguson did not attempt to 'profit unconscionably' from the transaction." Turner v. Ferguson, No. 96-1148-CS-W-4, slip op. 11 (Sept. 11, 1997). The Court cited Ferguson's having sent letters to the limited partners informing them of his desire to buy the land, his arranging to have an attorney review the terms of the sales contract with the limited partners, his departure from the special meeting of July 16 while the limited partners discussed the sale, and his having paid more for the land, per acre, than was offered in one of the original proposals that collapsed. The Court also rejected Turner's argument that Ferguson's failure to follow up with the Highlands Group after it made an $850,000 offer, or to attempt to negotiate more attractive terms, was evidence of a

---

[3]The District Court and the parties have cited both partnership cases and cases involving the fiduciary duties of corporate officers and directors, making no distinction between the two groups of cases. At least for purposes of this appeal, we accept this approach.

breach of his fiduciary duty, holding that Ferguson did not receive the offer until after it had expired,[4] and that he had not concealed it from his partners. The Court noted that Ferguson had agreed to pay the entire purchase price at closing and had waived his brokerage fee, to which he was entitled under the partnership agreement. Emphasizing the fact that the limited partners were aware of both offers when they voted to accept Huntington Ridge's, the Court concluded that the sale of the property was conducted fairly, honestly, and openly.

## III.

Drawing all inferences in favor of the non-moving party, a court correctly grants summary judgment if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Under Missouri law, Ferguson prevails if he can show that he did not secretly or unconscionably profit from his dealings with the partnership property. The burden of proof as to these issues is on Ferguson, the fiduciary. Having reviewed the evidence, it is our view that the District Court did not give Turner the benefit of all reasonable inferences, and that this case should have gone to trial, instead of being decided as a matter of law on summary judgment.

As support for his claim that Ferguson placed his own interests ahead of those of the partnership, Turner argues that Ferguson failed to negotiate with the Highlands Group, if only for purposes of comparison, and instead completely ignored its offer while promoting his own. Turner argues, for example, that Ferguson never directly contacted the Highlands Group about its offer, even after it was raised to $100,000 more than his own offer; that Ferguson's associate, instead of inviting negotiations, discouraged the Highlands offer by writing to say that the property was already under

---

[4]Turner alleges that Ferguson "probably" received the Highlands offer about May 23. Ferguson disputes this, contending that he received it on May 29 because Turner sent it to the wrong address.

contract and was expected to close the next day; that Ferguson, in an effort to accelerate the closing, attempted to have Eldon Boisseau, Turner's law partner, sign a warranty deed; that the terms of Huntington Ridge's offer, in addition to being worth $100,000 less, were not as advantageous as the Highlands offer; and that, despite his conflict, Ferguson never sought an independent appraisal of the property. We believe the trier of fact could reasonably infer from this evidence that Ferguson didn't pursue the Highlands offer because its terms might have been, or might have become, more attractive than his own.

Other inferences might have been drawn in Turner's favor. For instance, instead of recommending that the limited partners obtain their own attorney, Ferguson hired counsel for them. John Crossett, the attorney who drafted the conflicts amendment to the partnership agreement, testified that he was confused about who his client was. Jurors could reasonably infer that the primary purpose of the conflicts amendment was to protect Ferguson against accusations of the sort that form the basis of Turner's allegations. Crossett also questioned the validity of the conflicts amendment in light of the requirement in the partnership agreement that any amendment reducing the liabilities, obligations, or responsibilities of the general partner be approved in writing by all of the partners. Finally, Ferguson's interest in Liberty was 16.75 per cent., while his interest in Huntington Ridge was 50 per cent. By arranging the sale to Huntington Ridge, Ferguson's interest in the property more than tripled, and, within six months, an offer of more than $1 million had been made for the land. We believe a jury could reasonably infer from this that Ferguson was motivated by a desire to increase his stake in property whose value would continue to appreciate.

An important factor in our minds is that the burden of proof on the key issue was on the defendant, Ferguson. Summary judgments in favor of parties who have the burden of proof are rare, and rightly so. In addition, the question whether a transaction is "unconscionable" is necessarily one of judgment and degree, the sort of question which is normally not clear enough to be decided as a matter of law. There is little or

no dispute in this case about the actual occurrences, the historical facts, surrounding the sale of the land, but we think reasonable people could differ on the question whether Ferguson's case is sufficiently strong to carry his burden on the moral issue of unconscionability. The case must go back for trial on that issue.

The appellant Turner asks us to address two other questions. First, he asks us to hold that the partnership-agreement amendment, the one that purported to authorize a majority of limited partners to approve a conflict of interest on the part of the general partner, is invalid, because it was not supported by a unanimous vote of the limited partners. We decline to address this issue. Ferguson does not assert this amendment as a defense. Accordingly, whether the amendment is valid or not is immaterial to this case. In addition, Turner asks that a constructive trust be imposed on the land, which is now the property of Huntington Ridge. This is an issue of remedy, and can be addressed by the District Court if and when Ferguson is found liable.

For the reasons given in this opinion, the judgment of the District Court is reversed, and the cause remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.