**James RAY, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**No. 4:10–cv–00549 RP–CFB.**

United States District Court,
S.D. Iowa,
Central Division.

April 6, 2011.

Paige Ellen Fiedler, Whitney C. Judkins, Fiedler Law Firm PLC, Urbandale, IA, for Plaintiff.

Julie Tomka Bittner, Laurie Jo Wiedenhoff, Kerrie M. Murphy, Gonzalez Saggio & Harlan LLP, West Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Currently before the Court is a Motion for Summary Judgment, filed by Nationwide Mutual Insurance Company ("Nationwide") on December 15, 2010. Clerk's No. 5. Plaintiff James Ray ("Ray") filed a response in opposition to Nationwide's motion on January 10, 2011. Clerk's No. 6. Nationwide filed a reply on January 25, 2011. Clerk's No. 17. The Court ordered supplemental briefing on this motion on February 10, 2011. Clerk's No. 23. Nationwide filed its supplemental brief on February 24, 2011. Clerk's No. 24. Ray filed a response to Nationwide's supplemental brief on March 31, 2011. Clerk's No. 28. The matter is fully submitted.[1]

## I. FACTUAL & PROCEDURAL BACKGROUND

Prior to June 2009, Ray worked as a Casualty Special Claims Representative II for Nationwide. Def.'s Statement of Undisputed Material Facts (hereinafter "Def.'s Facts") ¶ 36 (Clerk's No. 6–1); *see also id.* ¶¶ 1–2. Nationwide terminated Ray's employment in early June 2009,[2] when Ray was 54 years old. *See id.* ¶ 2; Pl.'s Resp. to Def.'s Statement of Material Facts (hereinafter "Pl.'s Facts Resp.") at 1.

---

1. Nationwide has requested oral argument; however, the Court does not believe oral argument will substantially aid it in resolving the present matter. Therefore, Nationwide's request is denied.

2. The parties dispute the exact date of Ray's termination; however, the exact date is not material to the resolution of the instant motion.

On October 22, 2009, Ray filed a complaint with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC"). Def.'s Supplemental Statement of Undisputed Material Facts (hereinafter "Def.'s Supp. Facts") ¶ 3 (Clerk's No. 24–1). That complaint (hereinafter the "EEOC Complaint") was dual-filed with the Missouri Commission on Human Rights (hereinafter the "MCHR"). Def.'s Facts ¶ 4; *see also* App. in Supp. of Def.'s Mot. for Summ. J (hereinafter "App.") at 21 (Clerk's No. 5–3). In the EEOC Complaint, Ray alleged that Nationwide had discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). App. at 1; Def.'s Facts ¶¶ 4, 6–7.

When Ray filed the EEOC Complaint on October 22, 2009, the EEOC gave him a questionnaire regarding his discrimination claim. *See* Def.'s Supp. Facts ¶ 3. That same day, EEOC representatives interviewed Ray for approximately 20–30 minutes. Pl.'s Resp. to Def.'s Supp. Facts (hereinafter "Pl.'s Supp. Facts Resp.") at 3 (Clerk's No. 28–1); *see also* Def.'s Facts ¶ 10; Pl.'s Facts Resp. at 4. Nationwide received notification of the EEOC Complaint. Def.'s Supp. Facts ¶ 12. That notification indicated that "persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge." Def.'s Second Supplemental App. in Supp. of its Mot. for Summ. J. (hereinafter "Def.'s 2d Supp.App.") at 22 (Clerk's No. 25). Nationwide did not file any response with the EEOC. Def.'s Supp. Facts ¶ 13.

On October 27, 2009, the EEOC investigator recommended that Ray's case be closed based upon "not reasonable cause" (hereinafter the " 'no reasonable cause' determination") and issued a "Dismissal and Notice of Rights," also known as a "right-to-sue" letter. *See* App. at 14, 16. The EEOC right-to-sue letter stated, among other things, that: "You may file a lawsuit against the respondent(s) *under federal law* based on this charge in federal or state court." *Id.* (emphasis added). The letter also notified Ray that he must bring any such suit within 90 days of his receipt of the letter. *See id.* On November 9, 2009, the MCHR also issued Ray a right-to-sue letter. *Id.* at 21. The MCHR letter stated, among other things, that:

> Pursuant to the Missouri Human Rights Act, your complaint was dual-filed with the [EEOC] and the [MCHR]. The MCHR has been informed that the EEOC has completed their processing of your complaint and issued a notice of your right to sue. Therefore, the MCHR is also issuing a notice of your right to sue based on the EEOC's processing.

*Id.* The MCHR letter also stated: "You are hereby notified of your right to sue the respondent(s) named in your complaint *in state circuit court.*" *Id.* (emphasis added). The MCHR letter also indicated that any case filed in Missouri must be filed within 90 days or the right to sue would be lost. *See id.* Ray did not file a claim under either the ADEA or Missouri state law within 90 days of receiving the right-to-sue letters. *See* Pl.'s Facts ¶¶ 20–21; Pl.'s Facts Resp. at 8.

On March 25, 2010, Ray filed a complaint with the Iowa Civil Rights Commission (hereinafter the "ICRC"). *See* App. at 22. In that complaint (hereinafter the "ICRC Complaint"), Ray alleged that Nationwide had discriminated against him in violation of the Iowa Civil Rights Act ("ICRA"). *Id.* at 22–28. Shortly thereafter, Nationwide filed a response with the ICRC, asserting, among other things, that Ray had already filed a complaint for age discrimination with the EEOC and the

MCHR and arguing that Ray was not allowed to have "a second bite at the apple" in Iowa. *See* Def.'s Facts ¶ 23. The ICRC screened the case and issued a "Screening Data Analysis and Case Determination." Def.'s Supp. Facts ¶ 19 (citing App. at 298–303). The ICRC found that the case warranted "further investigation," but did not address Nationwide's argument regarding Ray's prior complaints. *See* App. at 298–303. On August 4, 2010, Ray requested a right-to-sue letter from the ICRC. Def.'s 2d Supp.App. at 311. The ICRC issued the requested right-to-sue letter and closed its file. *See* Def.'s Facts ¶ 24; App. at 44.

In October 2010, Ray filed the instant case in Iowa state court, alleging that Nationwide discriminated against him in violation of the ICRA. Def.'s Facts ¶ 25; Clerk's No. 1–1. On November 24, 2010, Nationwide removed the case to this Court on the basis of diversity jurisdiction. Clerk's No. 1 ¶ 3.

## II. SUMMARY JUDGMENT STANDARD

The term "summary judgment" is something of a misnomer.[3] *See* Hornby, D. Brock, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010). It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive. *Id.* at 273, 281. The complexity of the process, however, reflects the "complexity of law and life." *Id.* at 281. "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial. *Id.* at 281–82. Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay."[4] *Id.* at 281. Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call." *Id.* at 287.

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[5] "[S]ummary judgment is an ex-

---

**3.** Judge D. Brock Hornby, a District Court judge for the District of Maine, convincingly suggests that the name "summary judgment" should be changed to "motion for judgment without trial." Hornby, D. Brock, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273, 284 (Spring 2010).

**4.** Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. *Id.* at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other

things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

**5.** Rule 56 was revised shortly before the instant motion was filed and all citations to Rule 56 in this Order refer to the current version. However, the revised rule does not change the substantive standard for summary judgment. *See* Fed.R.Civ.P. 56 advisory committee's note ("Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged."). Therefore, the Court will continue to rely upon pre–2010 case law regarding the substantive standards governing summary judgment.

treme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.,* 523 F.2d 891, 893 n. 5 (8th Cir. 1975)). The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.,* 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.,* 523 F.2d 340, 347 (8th Cir.1975)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law. *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994). The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See Commercial Union Ins. Co. v. Schmidt,* 967 F.2d 270, 271 (8th Cir.1992); *see also* Fed.R.Civ.P. 56(c). This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are materi-

al.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Courts do not treat summary judgment as if it were a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment, the job of a court is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial. *See id.* (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2712 (3d ed.1998)). It is the responsibility of the parties to provide the evidence necessary for this assessment. *Id.* at 921. Notably, "[s]ummary judgments in favor of parties who have the burden of proof are rare, and rightly so." *Turner v. Ferguson,* 149 F.3d 821, 824 (8th Cir.1998).

### III. LAW AND ANALYSIS

In the instant motion, Nationwide seeks summary judgment on all of Ray's claims. Mot. at 1. Nationwide contends that Ray was barred from filing the ICRC Complaint by claim preclusion. *See* Br. & Mem. of Authorities in Supp. of Def.'s Mot. for Summ. J. (hereinafter "Def.'s Br.") at 1 (Clerk's No. 5–1). In the alternative, Nationwide asserts that Ray's "age-based discharge claim is barred by the doctrine of issue preclusion and [that] all of the discrete acts of age discrimination that allegedly occurred prior to his discharge are untimely and must be dismissed." *Id.* The Court will consider each of these arguments in turn.

### A. *Claim Preclusion*

■ Nationwide argues that the EEOC's "no reasonable cause" determina-

tion constitutes a binding judgment on the merits that barred Ray from filing the ICRC Complaint. *See* Def.'s Br. at 5–8. Thus, according to Nationwide, the ICRC Complaint "cannot be relied on to satisfy the procedural prerequisite that [he] file a civil lawsuit within ninety (90) days of receiving his Notice of Right to Sue letter." *Id.* at 5.

■ Under the doctrine of claim preclusion, also called *res judicata,* "a judgment on the merits in an earlier lawsuit bars a second suit involving the same parties based on the same cause of action." *Wintermute v. Kan. Bankers Sur. Co.,* 630 F.3d 1063, 1067 (8th Cir.2011) (citing *Prof'l Mgmt. Assocs., Inc. v. KPMG LLP,* 345 F.3d 1030, 1032 (8th Cir.2003)). "Claim preclusion, like issue preclusion, is an affirmative defense"; therefore, Nationwide bears the burden of proof. *See Taylor v. Sturgell,* 553 U.S. 880, 907, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008); *see also Ringo v. Lombardi,* 706 F.Supp.2d 952, 963 (W.D.Mo.2010) ("*Res judicata* is an affirmative defense on which Defendants bear the burden."). In order to prove that claim preclusion bars Ray's claim, Nationwide must show that there was "a prior judgment rendered by a court of competent jurisdiction, that prior judgment was final and on the merits, and it involved the same cause of action and the same parties or privies." *See Wedow v. City of Kansas City, Mo.,* 442 F.3d 661, 669 (8th Cir.2006). An agency determination is entitled to preclusive effect where: (1) the agency was acting in a judicial capacity; (2) the agency resolved disputed acts properly before it; and (3) the parties had "an adequate opportunity to litigate...." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) ("We have

long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.").

Therefore, the Court must determine whether or not the EEOC's proceedings satisfied these three requirements—i.e., whether the EEOC proceedings constituted an "adjudication" of Ray's claims. *See* Def.'s Br. at 12–14; Pl.'s Br. in Resistance to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Br.") at 5–6 (Clerk's No. 9). The parties dispute, in particular, the first and third factors—namely, whether the EEOC was "acting in a judicial capacity" when it issued its "no reasonable cause" determination and whether Ray had "an adequate opportunity to litigate" his claims before the EEOC. *See Utah Constr.*, 384 U.S. at 422, 86 S.Ct. 1545.

Nationwide suggests that the EEOC acted in a judicial capacity in this case and, thus, that the EEOC's "no reasonable cause" determination constituted a "final adjudicatory decision[ ]." *See* Def.'s Br. at 10–11. However, the EEOC "cannot adjudicate claims . . . ." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); 29 U.S.C. § 626(a) ("The Equal Employment Opportunity Commission shall have the power to *make investigations* and require the keeping of records necessary or appropriate for the administration of this chapter in accordance with the powers and procedures provided in sections 209 and 211 of this title.") (emphasis added); *see also Tulloss v. Near N. Montessori School, Inc.*, 776 F.2d 150, 152 (7th Cir.1985) ("The proceedings be-

fore the EEOC are nonbinding and nonadjudicative in nature.") (citing *Alexander*, 415 U.S. at 44, 94 S.Ct. 1011); *Francis–Sobel v. Univ. of Me.*, 597 F.2d 15, 18 (1st Cir.1979) (stating that an EEOC "determination of reasonable cause is nonbinding and nonfinal, investigative and not adjudicative . . . ."). "The EEOC's reasonable cause determination does not adjudicate rights and liabilities; it merely places the defendant on notice of the charges against him." *EEOC v. CRST Van Expedited, Inc.*, No. 07–CV–95, 2009 WL 2524402, at *15 (N.D.Iowa Aug. 13, 2009) (quoting *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir.1984)). Therefore, the Court concludes that the EEOC was not acting in a judicial capacity when it issued its "no reasonable cause" determination.[6]

■ Even if the EEOC had been acting in a judicial capacity, issue preclusion would not apply unless Ray had "an adequate opportunity to litigate" his claims before the EEOC. *See Utah Constr.*, 384 U.S. at 422, 86 S.Ct. 1545. Nationwide argues that Ray had an adequate opportunity to litigate his claims because the EEOC proceeding in this case satisfies all of the "essential elements of adjudication" listed in § 83(2) of the Restatement (Second) of Judgments. Def.'s Br. at 10–14. Although Nationwide makes several superficial comparisons between the EEOC and judicial procedures, the Court cannot agree that the EEOC proceeding in this case had "the essential procedural characteristics of a court." *See* Restatement (Second) of Judgments § 83 cmt. b. For just one example of the numerous, manifest differences, Ray did not have the "op-

---

**6.** Nationwide's arguments regarding the full faith and credit clause of 28 U.S.C. § 1738 do not compel a different conclusion. *See* Def.'s Supp. Br. at 4–5. Section 1738 "governs the preclusive effect to be given the judgments and records of state courts, and is not applicable to . . . unreviewed state administrative factfinding . . . ." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Even if the Court assumes, *arguendo*, that the determinations made by the EEOC and the MCHR constitute "administrative factfinding," they were not reviewed by any court and, therefore, are not covered by § 1738.

portunity ... to obtain evidence" during the EEOC proceedings. *See id.* § 83(2)(e). This is especially problematic in a discrimination case because the most probative evidence on the issue of discrimination—if any exists—is likely to be in the defendant's possession, custody, or control.

■ Additionally, the EEOC process was not adversarial—a point Nationwide has effectively conceded. Def.'s Supp. Br. in Supp. of its Mot. for Summ. J. (hereinafter "Def.'s Supp. Br.") at 5 (Clerk's No. 24) ("[T]he EEOC proceedings consisted of an entirely one-sided process in favor of Plaintiff.... In other words, the EEOC allowed Plaintiff to submit his uncontested allegations of age discrimination in a non-adversarial setting."). "Absent actual and adversarial litigation ... principles of issue preclusion do not hold fast." *See Regions Hosp. v. Shalala,* 522 U.S. 448, 463–64, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998) (citing *Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1877)); *see also HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala,* 164 F.3d 415, 419 (8th Cir.1998) (noting that the Supreme Court has "consistently required 'actual and adversarial litigation'" before applying preclusion principles (quoting *Regions Hosp.,* 522 U.S. at 463–64, 118 S.Ct. 909)). Given the one-sided nature of the EEOC proceedings, the Court cannot conclude that there was any "actual and adversarial" litigation at the EEOC. *See Regions Hosp.,* 522 U.S. at 463–64, 118 S.Ct. 909. Indeed, as far as the Court can tell, "[n]o court has ever held ... that EEOC proceedings are 'sufficiently judicial in nature to warrant estoppel.'" *Hill v. Rayboy–Brauestein,* 467 F.Supp.2d 336, 369 (S.D.N.Y.2006) (quoting *Richards v. Calvet,* 99 Civ. 12172, 2005 WL 743251, at *10 (S.D.N.Y. Mar. 31, 2005)). In fact, it appears that "the opposite is true, as every court that has considered the issue has found that EEOC determinations have no preclusive effect." *Id.* (citing cases).

For all of these reasons, the Court concludes that Nationwide has failed to demonstrate that the EEOC's "no reasonable cause" determination constituted an adjudication of Ray's discrimination claim. Therefore, Nationwide is not entitled to judgment as a matter of law on its defense of claim preclusion.

### B. *Issue Preclusion*

■ Nationwide argues that Ray's "age-based discharge claim is barred by the doctrine of issue preclusion...." Def.'s Br. at 1. "Under issue preclusion, previously known as collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Knutson v. City of Fargo,* 600 F.3d 992, 996 (8th Cir.2010) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (internal quotation marks omitted)). "The findings of fact from a state administrative proceeding are entitled to preclusive effect provided that the [state] agency was acting in a judicial capacity, the questions litigated were properly before the agency judge, and the parties had an adequate opportunity to litigate them." *Campbell v. Ark. Dep't of Corr.,* 155 F.3d 950, 960 (8th Cir. 1998) (citing *Alexander v. Pathfinder, Inc.,* 91 F.3d 59, 62 (8th Cir.1996)); *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." (internal citation, quotation marks, and ellipsis omitted)).

As discussed above, the EEOC was not acting in a judicial capacity when it issued

its "no reasonable cause" determination and Nationwide has not demonstrated that Ray had an adequate opportunity to litigate his claims before the EEOC. *See Campbell,* 155 F.3d at 960. Therefore, Ray's EEOC hearing "was not sufficiently like a judicial proceeding for [the EEOC's] statement about the evidence to be given preclusive effect in this case." *See id.* Thus, Nationwide is not entitled to judgment as a matter of law on its defense of issue preclusion.

### C. *Timeliness*

#### 1. *Wrongful discharge.*

■ Nationwide also argues that Ray's claim for wrongful discharge—and, indeed, this entire case—"is time barred because Plaintiff failed to file said litigation within ninety (90) days of the issuance of the Notice of Right to Sue letter issued by the EEOC on October 27, 2009" or within 90 days of the MCHR's Notice of Right to Sue letter. Def.'s Br. at 14. Nationwide asserts that these letters bar Ray "from bringing any federal claims of discrimination or retaliation against Nationwide in any state or federal court." *See* Def.'s Br. at 14. The Court does not agree. Although, as Ray concedes, his claims under the ADEA and under Missouri law are time-barred, Ray is not currently seeking relief under either federal or Missouri law. *See* Pl.'s Br. at 17–18; *see also* Clerk's No. 1–1. Nationwide has not pointed to—and the Court is not aware of—any provision of either the ADEA or Missouri law which contemplates a binding election of remedies. Additionally, Nationwide has not cited any law indicating that Iowa courts would give preclusive effect to the EEOC's "not probable cause" determination.[7] *Cf. Hill,* 467 F.Supp.2d at 370 n. 37 (noting that "the cases cited by Defendants ... hold that federal courts must give adminis-

trative agencies acting in a judicial capacity 'the preclusive effect which they would be accorded' by a state court" but that "Defendants cite no law, and the Court is aware of none, that holds that New York courts give preclusive effect to 'no probable cause' determinations of the EEOC." (internal citation omitted)). Therefore, the Court cannot agree with Nationwide's suggestion that because Ray's ADEA and Missouri claims are time-barred, his claim under Iowa law is also barred. *See generally Alexander,* 415 U.S. at 44, 94 S.Ct. 1011 (noting that, "in general, submission of a claim to one forum does not preclude a later submission to another").

■ Nationwide's arguments regarding 29 U.S.C. § 633(a) do not compel a different conclusion. *See* Def.'s Supp. Br. at 3–4. Section 633(a) provides only that "upon commencement of action under [the ADEA] such action shall supersede any State action." The use of the term "supersede" in this provision cannot be reasonably read, as Nationwide insists, to *"preclude* any state from taking contradictory action [to that of the EEOC] after the fact." *See* Def.'s Supp. Br. at 4 (emphasis added). To the contrary, "[t]he legislative history to ADEA construed 'supersede' to mean 'stay.'" *Shanahan v. WITI–TV, Inc.,* 565 F.Supp. 219, 224 n. 2 (E.D.Wis.1982) (citing H.R.Rep. No. 805, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.C.C.A.N. 2213, 2224). A provision providing for a stay is obviously different from one that would *preclude* all later state actions. For all of these reasons, Nationwide is not entitled to judgment as a matter of law on this issue.

#### 2. *Pre-discharge conduct.*

The ICRA provides that "a claim under this chapter shall not be maintained unless

---

7. Additionally, the ICRC's failure to address Nationwide's *res judicata* argument suggests that the ICRC itself did not consider the pre-

vious state and federal complaints to have any preclusive effect on the Iowa administrative proceedings.

a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(13). Nationwide argues that:

A quick calculation reveals that the relevant three hundred (300) day time frame for purposes of analyzing whether or not Nationwide committed any discrete acts of discriminatory conduct toward Plaintiff based on age is May 29, 2009— March 25, 2010. Since Plaintiff was discharged effective June 2, 2009, it is quite obvious that the only discriminatory or unfair practice that could fall within the relevant 300 day time frame is his discharge.

Def.'s Br. at 17. Therefore, according to Nationwide, Ray's "allegations of age discrimination that occurred prior to [his] discharge are untimely and must be dismissed." *Id.* at 2. However, Ray is not currently asserting any *claims* for pre-termination acts of discrimination. *See* Pl.'s Br. at 20; Clerk's No. 1–1 ¶ 29. Although Ray has pled some factual allegations regarding pre-termination acts of discrimination, these facts constitute background information only. Pl.'s Br. at 20. Thus, Nationwide's arguments appear to be directed at claims that do not currently exist. Because a party may only obtain summary judgment on "claim[s]" or "part[s] of claim[s]," Nationwide's arguments on this issue are not amenable to summary judgment. *See* Fed.R.Civ.P. 56(a).

## IV. CONCLUSION

For all of the foregoing reasons, Nationwide's motion for summary judgment (Clerk's No. 5) is DENIED.

IT IS SO ORDERED.