VICTOR C. HOWARD, JUDGE
Floyd Finch and Bruce Campbell appeal the judgment of the Jackson County Circuit Court pertaining to the dissolution of their law firm. Finch presents four points on appeal. Campbell presents five points on appeal. The judgment is affirmed in part and reversed in part.
Facts
This case involves disputes between two attorneys regarding the operation and dissolution of a law firm partnership.[1] Final judgment was entered following three and a half years of contentious litigation, two bench trials, and one jury trial.
*621 Floyd Finch and Bruce Campbell became partners in a law firm in September 2009. The partnership dissolved effective August 1, 2012. It continued to exist after that date solely for the purpose of winding up its affairs. They did not have a written partnership agreement or operating agreement, but they effectively operated a 50/50 partnership with each partner equally sharing the expenses and profits of the partnership. The partnership operated on a cash basis, and no accrual basis financial statements were ever created by the partnership.
Months prior to August 2012, Campbell sought to dissolve the partnership. When negotiations about the dissolution fell apart, Campbell locked Finch out of the law firm's office space with only his laptop computer.
After 2012, Campbell established his own law practice. He continued, however, to absorb 100% of the profits, losses and expenses of the partnership. Even though the partnership was effectively dissolved at this time, it was still experiencing profits from accounts receivable and incurring expenses as the partnership wrapped up its affairs.
In February 2013, Finch filed a first amended petition against Bruce Campbell, Finch's former law partner, and The Bruce Campbell Law Firm LLP. Finch alleged that Campbell improperly excluded Finch from the law firm of Finch & Campbell and from the firm's profits. The suit sought an accounting, access to records and other information, the imposition of a constructive trust, injunctive relief, and alleged breach of fiduciary duty.
In March 2013, Campbell filed a first amended answer and first amended counterclaims. The counterclaims alleged Finch failed to record or bill time for legal services rendered for several clients, breach of fiduciary duty, breach of contract and implied duty of good faith and fair dealing, and unjust enrichment.
In January 2014, the trial court granted in part Finch's motion for an immediate accounting, stay of discovery other than accounting issues, and for protective order. The trial court appointed Daniel J. Welsh as Special Master/Forensic Accountant for the purpose of conducting a full and complete accounting of Finch & Campbell. Because the partnership financial statements were prepared on a cash basis, Welsh searched for unrecorded assets and unrecorded liabilities.
The identified unrecorded assets were divided into two main categories: (1) accounts receivable and (2) work performed by attorneys and the paralegal on or before August 1, 2012 but billed after August 1, 2012 (Work in Progress). Identifying Work in Progress was very difficult due in large part to Finch's poor billing practices. Instead of using the partnership's billing software to track time spent on a client matter contemporaneously to the work performed, Finch would review emails and other work product and ask the office manager to create and generate a bill months or sometimes years after the work had been performed. As a result, large amounts of the accounts receivable and Work in Progress were identified by Welsh and determined to be uncollectable.
In December 2014 and January 2015, the trial court conducted a bench trial on issues pertaining to the forensic accounting ordered pursuant to Finch's motion and Count I (Action for Accounting and Production of Documents) of his amended petition. Marc Vianello, CPA, testified as Finch's expert witness. He opined that the minimum liquidity value of the partnership was $412,435.56 as of July 2012. That same expert had opined in Finch's 2012 marriage dissolution case that the value of the partnership was $1,038.75. The trial court *622 found that Vianello's testimony was not as credible as Welsh's testimony. The court found that the total equity of the partnership was $253,921.16 as of August 1, 2012. The trial court addressed the value of invoices expected to be received and adjusted that number to $350,376.29.
The trial court discussed Finch's position regarding the partnership during his dissolution proceedings. It found that Finch's position in the current case regarding the assets and liabilities of the partnership was inequitable. The court noted that the trial court adopted Finch's valuation during the dissolution trial and awarded his former spouse $519.38 for her marital interest in the partnership. The trial court further noted that if the dissolution court had used the numbers Finch proposed during the current case, his former spouse would have been awarded $206,218.28 for her marital interest in the partnership. The trial court adjusted the partnership's value to Finch's detriment, using numbers he claimed during his dissolution proceeding and equity.
In March 2015, the trial court entered its Findings of Fact, Conclusions of Law and Interlocutory Judgment as to Count I of Finch's amended petition. The trial court awarded Finch $30,548.57 previously deposited with the court by Finch. The trial court entered judgment for Finch and against Campbell and Campbell Law Firm jointly and severally in the amount of $12,887.07. The trial court subsequently lifted the discovery stay and authorized Welsh to release the documents collected for his forensic accounting to both Finch and Campbell.
In February 2016, a jury trial was conducted with respect to Count IV of Finch's amended petition-breach of fiduciary duty by Campbell and aiding and abetting breach of fiduciary duty by Campbell Law Firm. The trial also addressed Campbell and Campbell Law Firm's Counts I, II, and III of their counterclaim-breach of fiduciary duty, breach of contract and implied duty of good faith and fair dealing, and unjust enrichment. Prior to the jury trial, Finch abandoned his aiding and abetting breach of fiduciary claims against Campbell Law Firm.
In March 2016, the case was submitted to the jury. The jury returned with the following verdicts:
VERDICT A
On the claim of Plaintiff Floyd Finch for compensatory damages for breach of fiduciary duty against defendant Bruce Campbell, we, the undersigned jurors, find in favor of: Plaintiff Floyd Finch.
We, the undersigned jurors, assess the compensatory damages of plaintiff Floyd Finch at $150,000.
We, the undersigned jurors, find that Bruce Campbell IS NOT liable for punitive damages.
VERDICT B
On the claim of defendant Bruce Campbell for breach of fiduciary duty against plaintiff Floyd Finch, we, the undersigned jurors, find in favor of: Defendant Bruce Campbell.
On the claim of defendant Bruce Campbell for breach of contract and the implied duty of good faith and fair dealing against Floyd Finch, we, the undersigned jurors, find in favor of: Plaintiff Floyd Finch.
We, the undersigned jurors, assess the damages of defendant Bruce Campbell at $100,000.
VERDICT C
On the claim of defendant Bruce Campbell for unjust enrichment against plaintiff Floyd Finch, we, the undersigned jurors, find in favor of: Plaintiff Floyd Finch.
*623 We, the undersigned jurors, assess the damages of defendant Bruce Campbell at $0.
In October 2016, the trial court issued its Final Judgment and Omnibus Post-Trial Order. The trial court denied Finch's motion for judgment notwithstanding the verdict and alternative motion for a new trial. The trial court denied Finch's motion to award Finch 50% of the net profits Bruce Campbell Law Firm generated using assets and collections of Finch and Campbell Law Firm. The trial court denied Finch's motion for a constructive trust, to impose an accounting, and for an award of attorney's fees. The Trial court similarly denied Campbell's motion for judgment notwithstanding the verdict and alternative motion for a new trial.
Both Finch and Campbell appeal to this court.
Finch's Point I
In his first point in appeal, Finch says the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict and in awarding judgment against Finch for breach of fiduciary duty. He claims he had no fiduciary duty: to record his time in a particular manner, to bill clients on the schedule demanded by his partner, or to cooperate in billing in ways demanded by his partner. Finch argues that his billing or non-billing of partnership clients did not breach a fiduciary duty Finch owed to Campbell.
" 'The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict.' " City of Harrisonville v. McCall Serv. Stations , 495 S.W.3d 738, 748 (Mo. banc 2016) (quoting All Am. Painting, LLC v. Fin. Solutions & Assocs., Inc. , 315 S.W.3d 719, 723 (Mo. banc 2010) ).
When reviewing a circuit court's denial of a judgment notwithstanding the verdict, this Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability. Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences. This Court will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion.
Id. (quoting Smith v. Brown & Williamson Tobacco Corp. , 410 S.W.3d 623, 630 (Mo. banc 2013) ). " 'When the grant or denial of a directed verdict or a JNOV is based upon a matter of law ... we review the trial court's decision de novo. ' " Bailey v. Hawthorn Bank , 382 S.W.3d 84, 92 (Mo. App. W.D. 2012) (quoting Trinity Lutheran Church v. Lipps, 68 S.W.3d 552, 557 (Mo. App. E.D. 2001) ).
The jury found that Finch violated his fiduciary duty. Finch and Campbell did not have a written partnership agreement about anything, including about billing practices. Because of this, Finch argues in his brief that he "had the right to record his time and to bill his clients as he thought best." Finch cites the following subsection of Missouri's Uniform Partnership Law:
The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:
...
(5) All partners have equal rights in the management and conduct of the partnership business;
RSMo 358.180(5). Finch says in his brief:
Nothing in Missouri law authorizes Campbell to claim damages for breach *624 of fiduciary duty because Finch was (in Campbell's view) slow or inefficient in recording his time or in generating his bills, or because Finch didn't bill clients on the schedule Campbell thought best, because that was a matter of management and partnership operation reserved to the best judgment of each partner. If Campbell did not approve of Finch's billing practices, then his remedy was to dissolve the partnership, which was his right at any time.
Finch also says there is no evidence he profited by being slow at billing. He claims there must be self-dealing for billing practices to be a breach of fiduciary duty.
Campbell phrases the issue this way: "[W]hether a partner in a for profit law firm breaches his or her fiduciary duties to his/her partners by refusing to record or bill time worked for the law firm's clients when demands have been made to that partner by his/her partners and that partner's clients." This precise question is one of first impression in Missouri. The trial court found the following:
As to Verdict B, Finch filed a motion for JNOV based on his theory that a partner in a for profit law firm has no fiduciary duty to his firm or partners, even when under demands by his partners and clients, to record or bill his time for legal services performed in a timely manner. Campbell's evidence established that he and several clients repeatedly made demands on Finch to record and bill his time and that clients were disgruntled and unhappy when they finally received invoices for Finch work that dated back in some cases over three years. The evidence established that Campbell was directly damaged by Finch's actions in the form of lost revenues caused by Finch's dilatory behavior. Unlike Finch's claims, Campbell's claims were not tried to the Court in the accounting phase, as Campbell's damages were not accounted for in the accounting. These claims were for losses caused by Finch's actions in the form of lost revenues. The jury found for Campbell on these claims and awarded Campbell $100,000. Finch, as a partner in a law firm, had a duty to record and to facilitate Finch & Campbell's collection of fees for billable hours for work performed by Finch and others while a partner at Finch & Campbell, particularly where, as here, Finch's partner and clients were demanding bills and Finch disregarded such demands. See, Weir v. Holland & Knight, 34 Misc.3d 1207(A), 943 N.Y.S.2d 795 (N.Y. Sup. Ct. 2011) and Corwin and Ciampi, Law Firm Partnership Agreements Sec.1.03[1](2015). Finch's motion for JNOV is denied. The jury's Verdict B is hereby accepted by this Court as being fully supported by the law and the evidence.
Finch had a fiduciary duty to Campbell. "A partner in a law firm ... has duties to the other partners in the firm." Matter of Cupples , 952 S.W.2d 226, 235 (Mo. banc 1997). "A partner's fiduciary duty includes the duty to be candid concerning business opportunities, the duty to be fair, the duty not to put self-interests before the interests of the partnership, and the duty not to compete with the partnership in the business of the partnership." Id. at 235-36. "Prior to withdrawal, lawyers within a firm have a duty to treat each other fairly and honestly and to put the interests of the law firm regarding firm business before their individual interests." Id. at 236. "Each lawyer has a duty to the firm to represent firm clients diligently, competently, and zealously." Id.
Evidence was presented at trial that Finch did not bill his clients in a timely manner, that his clients and Campbell were upset about this, and that not all amounts billed were actually paid in part because of Finch's actions. Evidence was *625 presented that Finch's actions hurt the partnership, both in the form of decreased revenue and unhappy clients.
Evidence was presented at trial that Finch claimed to be "broke" prior to his marriage dissolution proceeding. Campbell argued that Finch intentionally failed to bill his clients appropriately because he wanted to lower his income for his marriage dissolution proceedings. In his appeal from his dissolution judgment, this court stated: "Such failure to seek for better employment and his argument that his gross monthly income on his Form 14 should be zero provides further evidence that Husband is intentionally under-employed by deliberately and voluntarily reducing his income." Finch v. Finch , 442 S.W.3d 209, 219 (Mo. App. W.D. 2014). Finch's income was $269,000 in 2010, $411,456 in 2011, and just $47,500 in 2012.
"[F]iduciary duties may be breached in a number of ways." Zakibe v. Ahrens & McCarron, Inc. , 28 S.W.3d 373, 382 (Mo. App. E.D. 2000). "These do not necessarily turn on whether the officer obtained secret profits as a result of the breach." Id. "An action for damages for breach of fiduciary duty does not depend on whether or not the officer or director realized a monetary profit." Id. at 383. Evidence was presented at trial that Finch put his personal interests above those of the partnership. This supports the jury's finding of breach of fiduciary duty.
Finch cites Thomas v. Milfelt , 222 S.W.2d 359 (Mo. App. 1949), for the proposition that he was allowed to decide whether to bill and how to bill clients. In Thomas , the court noted: "There is no evidence whatsoever to show that plaintiff, during the period when these transactions ... were happening, made any objections concerning defendant's method of keeping account of the partnership affairs, and it was not until after the dissolution of the partnership that plaintiff made any complaint." Id. at 364-65. In contrast, evidence was presented that Campbell and Finch's clients objected numerous times to Finch's failure to bill his clients in a timely manner.
Evidence was presented that Finch failed to timely bill his clients, possibly to lower his income for his divorce proceedings. This was a violation of Finch's fiduciary duty to the partnership. The point is denied.
Finch's Point II
In his second point on appeal, Finch says the trial court erred in submitting Instruction Number 11, Campbell's breach of fiduciary duty counterclaim against Finch. His second point contains four sub-arguments. Finch claims: (1) he had no fiduciary duty, (2) the instruction misstated the substantive law of Missouri, (3) the instruction provided the jury with a roving commission to speculate, and (4) the instruction was argumentative and confusing.
"This Court reviews claims of instructional error de novo. " Coomer v. Kansas City Royals Baseball Corp. , 437 S.W.3d 184, 191 (Mo. banc 2014). "The Court will not vacate a judgment on the basis of such an error, however, unless that error materially affected the merits of the action." Id. "Accordingly, the party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." Id. (internal quotation omitted).
The jury was given the following relevant instruction:
INSTRUCTION NO. 11
Your verdict must be for defendant Campbell on his claim against plaintiff Finch for breach of fiduciary duty, if you believe:
*626 First, either:
[1] plaintiff Finch failed to timely record his time for legal services performed while a partner with Finch and Campbell, LLP, or
[2] plaintiff Finch failed to timely bill clients for his legal services performed while a partner with Finch and Campbell, LLP, or
[3] plaintiff Finch refused to cooperate with Finch and Campbell, LLP in the billing of clients for legal services while a partner with Finch & Campbell, LLP, and
Second, plaintiff Finch thereby failed to act in the best interest of defendant Campbell, and
Third, in any one or more of the respects submitted in Paragraph First, such conduct directly caused damage to defendant Campbell.
Finch first argues that he did not have a fiduciary duty to bill clients in a specified manner. This was addressed in Point I. Finch next argues that the instructions misstated Missouri law because he did not have a duty to act in Campbell's best interests. Instead, he says he had a duty to act in the best interest of the clients and the partnership. Finch objected to Instruction 11 on several grounds, but none of those objections pertained to the language regarding the duty to act in Campbell's best interests as opposed to the partnership's best interest. While Campbell objected to similar language in Instruction 7, the instruction pertaining to Campbell's breach of fiduciary duty, Finch did not make a corresponding objection to Instruction 11. This argument is not preserved for appellate review. Gill Const., Inc. v. 18th & Vine Auth. , 157 S.W.3d 699, 719 (Mo. App. W.D. 2004).
Finch next says that the jury instruction "provided the jury with a roving commission to speculate about whether or not Finch breached his fiduciary duty to Campbell" by giving so many options. " 'Prejudicial and reversible error occurs when an instruction is proffered to a jury that gives the jury a roving commission.' " McNeill v. City of Kansas City , 372 S.W.3d 906, 909 (Mo. App. W.D. 2012) (quoting Hepler v. Caruthersville Supermarket Co., 102 S.W.3d 564, 568 (Mo. App. S.D. 2003) ). "A 'roving commission' is 'an abstract instruction ... in such broad language as to permit the jury to find a verdict without being limited to any issues of fact or law developed in the case.' " Id. (quoting Edgerton v. Morrison, 280 S.W.3d 62, 66 (Mo. banc 2009) ). " 'A "roving commission" occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suit its fancy or its perception of logic to impose liability.' " Id. at 910 (quoting Klotz v. St. Anthony's Med. Ctr., 311 S.W.3d 752, 766 (Mo. banc 2010) ).
"Where an instruction submits a question to the jury in a broad, abstract way without being limited to any issues of fact or law developed in the case, it may be considered a 'roving commission.' " Id. (internal quotation omitted). " 'To avoid a roving commission, the court must instruct the jurors regarding the specific conduct that renders the defendant liable.' " Id. (quoting Rinehart v. Shelter General Ins. Co., 261 S.W.3d 583, 594 (Mo. App. W.D. 2008) ). " '[I]f an instruction fails to advise the jury what acts or omissions of the party, if any, found by it from the evidence would constitute liability, the instruction is a roving commission.' " Id. (quoting Mathes v. Sher Express, L.L.C., 200 S.W.3d 97, 109 (Mo. App. W.D. 2006) ).
Jury instruction 11 listed three very specific actions Finch could have done to breach his fiduciary duty to Campbell. The jury was properly instructed regarding the *627 specific conduct that would render Finch liable. The instruction did not provide the jury with a roving commission. Cf. McNeill , 372 S.W.3d at 909-10 (erroneous instruction asked jury to find if "defendant wrongfully demolished the building" without identifying what "acts or omissions on the part of the [defendant] might be considered to have rendered the demolition of the building wrongful.").
Finally, Finch claims the jury instructions were argumentative and confusing because they did not contain a definition of fiduciary duty. Jury Instruction 11 followed the substantive law with respect to breach of fiduciary duty. It set forth the facts necessary to establish Finch's fiduciary duty and his breach thereof. See Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co. , 168 S.W.3d 488, 497-99 (Mo. App. E.D. 2005).
The point is denied.
Finch's Point III
In his third point on appeal, Finch says the trial court erred in failing to award him 50% of the profits Campbell obtained by using the cash, assets, and collections of the dissolved partnership to fund the Bruce Campbell Law Firm. He states this was done without his consent and that Campbell excluded Finch from information about the winding up process. Finch claims Missouri law requires the trial court to award him 50%. Alternatively, he says the trial court erred in failing to award him prejudgment interest for Campbell's breach of fiduciary duty because he was entitled to either 50% of the profits or prejudgment interest for Campbell's self-dealing breach of fiduciary duty.
In a judge-tried case, the trial Court's judgment will be affirmed unless there is no substantive evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976).
The trial court stated in its final judgment:
Finch's Motion for the Court to Award Plaintiff 50% of the Net Profits of Defendant Bruce Campbell Law Firm.
During argument, Finch's counsel reasserted the claim that Finch is entitled to an election between the value of his 50% partnership interest in Finch & Campbell or to receive his 50% partnership interest plus half of all profits earned by the Bruce Campbell Law Firm LLP from August 1, 2012 through the present day, although when asked for this amount, counsel could not quantify it at the hearing. This claim was rejected by this Court in its Orders of April 30, 2014 and March 27, 2015. No evidence was presented that would cause this Court to alter its prior rulings. Finch's claim is based on R.S.Mo. § 358.420, which this Court found inapplicable to the facts of this case because the business of Finch & Campbell was not continued as this Court found that the partnership dissolved on August 1, 2012 and only existed thereafter for purposes of winding up, but Finch continues to assert it. Even if this provision was somehow applicable, the law is clear that the election provided for in R.S.Mo. § 358.420 does not come into play where the profits of the post dissolution partnership are derived from the personal services of the remaining partners. See, Gull v. Van Epps, 185 Wis.2d 609, 517 N.W.2d 531, 534 (Wisc. App. 1994) ("In a partnership performing professional services, the "profits" of the partnership are not ordinarily derived from the investment of capital but are attributable to the performance of services. "The profits of a professional, whether he works individually or jointly with other professionals in *628 his field, are recognized as personal service income since the return attributable to capital rather than individual skill and labor is negligible." Laura L. Crum, Comment, Dissolution of a Law Partnership-Goodwill, Winding up Profits & Additional Compensation, 6 J. LEGAL PROF. 277, 289 (1981)"); and Weisbrod v. Ely, 767 P.2d 171, 175 (Wy. Sup. Ct. 1989) ("The evidence presented established that Ely conducted all of the business, provided all services, and profits earned were attributable to her labor rather than to the existence of office furniture. The business of property management in this case differs from businesses involving sale of goods and materials. In the latter case, an outgoing partner who has invested in inventory would be entitled to his proportionate share of any profits derived from their subsequent sale. In contrast, in a service business all that is sold to produce income are the services of the firm-here, the property management services of Ely. We conclude that it was not error for the trial Court to find that there were no post-dissolution profits attributable to the property rights of Weisbrod."). Finch presented no evidence that any of the office equipment or furniture produced any post-dissolution profits. The evidence only showed the revenue generated from the personal legal services of Campbell and the other timekeepers at the Bruce Campbell Law Firm LLP. Finch & Campbell dissolved on August 1, 2012 and did not continue except for winding up purposes and all of the post dissolution profits earned by the Bruce Campbell Law Firm LLP were derived from the personal services of the members and employees of that firm on behalf of its clients. Finch has no legal right to the profits of another firm.
In his reply brief, Finch says the trial court's judgment "was based on a legal theory Finch consistently disavowed." Finch argues he is entitled to either 50% of the profits or prejudgment interest for Campbell's self-dealing breach of fiduciary duty. He relies on section 358.210.1, which states:
1. Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.
He notes that the jury found that Campbell breached his fiduciary duty to Finch. Finch says Campbell commingled funds and engaged in self-dealing by locking Finch out and using Finch & Campbell funds to operate his new law firm. He says in his brief: "What Campbell purchased with the commingled funds was his ability to practice law and fund his lifestyle without paying his [Bruce Campbell Law Firm] staff and other expenses out of his own pocket or out of [Bruce Campbell Law Firm's] revenues."
"Missouri law provides that each partner has a duty to 'render on demand true and full information of all things affecting the partnership to any partner....' " King v. Bullard , 257 S.W.3d 175, 182 (Mo. App. E.D. 2008) (quoting Section 358.200). "Pursuant to Section 358.210.1, '[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.' " Id. (quoting Section 358.210.1). "Coupled with the duty to account is a partner's right to receive a formal accounting from his or her co-partners." Id. (citing Section 358.220). "Section *629 358.220 sets forth the circumstances under which an accounting may be had." Id.
"It is well-established in Missouri that an action for accounting proceeds in two stages." Id. at 183. "First, the trial court determines whether the party seeking an accounting is entitled to such relief." Id. "If so, the court will enter an interlocutory order establishing that party's right to an accounting." Id. "Only if the court determines that such right exists will it proceed to the second stage of the actual accounting." Id. "However, a trial court does not necessarily err if it proceeds to an accounting before establishing the responding party's liability to account." Id. Once the trial court completes "the first stage of the parties' claim for accounting by finding that a partnership exists and that each partner has a corresponding obligation to accurately account to the other" then "it is then incumbent upon the trial court to proceed with the second stage of the accounting proceeding." Id. at 183-84.
The trial court proceeded to the accounting stage in this case. It determined the date the partnership was dissolved. It determined, with assistance from the special master, the value of the partnership on that date, including monies that came in after the date of dissolution for work that was done prior to dissolution. It then determined each partner's share of that total value. Campbell's breach of fiduciary duty pertained to him locking Finch out of the firm after the date of dissolution. It did not decrease the firm's assets or increase the firm's liabilities in any way. Campbell did not attempt to conceal, hide, secrete, diminish, or misappropriate any of the partnership's assets. The trial court's analysis set out above is correct.
Finch also relies on the doctrine of trustee ex malificio. He relies on this language: "If a partner wrongfully excludes another from the partnership business and then takes unto himself the assets of the firm, he becomes as to the excluded partner a trustee ex malificio." Stein v. Jung , 492 S.W.2d 139, 146 (Mo. App. 1973). Stein involves an accounting for the entire life of the partnership, including the winding up period. Id. at 145-46 ("The accounting must encompass the life of the partnership down to and including the winding up of the business."). The trial court included the winding up period in this case.
The point is denied.
Finch's Point IV
In his fourth point on appeal, Finch says the trial court erred in incorporating its Interlocutory Judgment on Plaintiff's Count I into the final judgment without correcting errors made therein. His second point contains eight sub-arguments. Finch claims: (1) the trial court made erroneous factual findings not supported by substantial evidence regarding Finch's marital dissolution trial, (2) the unclean hands doctrine was erroneously applied to a lease, (3) the unclean hands doctrine was erroneously applied to expenses from the Bruce Campbell Law Firm, (4) the unclean hands doctrine was erroneously applied to aid Campbell who had himself acted inequitably, (5) the unclean hands doctrine should not be based on wrongs done to outside parties, (6) the unclean hands doctrine should not be based on wrongs not used to acquire the rights involved in this case, (7) the unclean hands doctrine violates Missouri's Partnership Law, and (8) the interlocutory judgment failed to address collections Campbell did not disclose to Welsh.
In a judge-tried case, the trial Court's judgment will be affirmed unless there is no substantive evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.
*630 Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976).
The trial court issued a judgment in March 2015 after a bench trial with respect to Count I-An action for accounting and production of documents. This was the trial concerning the report of Special Master Daniel Welsh, CPA. Finch & Campbell dissolved on August 1, 2012. Campbell locked Finch out of the offices on August 31, 2012. The entire Finch & Campbell lease liability was paid off by February 15, 2015. Finch complains that the trial court imposed on Finch & Campbell the entire amount of the lease liability even though The Bruce Campbell Law Firm was using the office space from the time Finch was locked out.
The trial court found that Finch's expert witness in his dissolution trial had inflated the Finch & Campbell lease obligation. The dissolution trial court granted Finch's request to deduct the full value of the lease obligation as a liability of Finch & Campbell, thereby reducing the value of Finch & Campbell. Finch claims now that his expert witness did not inflate the value of the lease obligation in his dissolution trial.
Finch also complains about the account receivable referred to as the V Receivable in this case. The trial court found that Finch's expert witness had not included the value of the V Receivable when calculating the value of Finch & Campbell during Finch's dissolution trial. Thus, it did not include the value of the V Receivable during the current case.
The trial court in the current case made the following Findings of Fact:
5. After considering the evidence, arguments, and briefing, the Court entered an Order on April 30, 2014 finding that neither collateral estoppel nor judicial estoppel bar Finch from advocating a value of the Partnership in this case different than the value claimed and argued by Finch in his marital dissolution proceeding. The Court also found that the Partnership dissolved effective August 1, 2012 and continued to exist after August 1, 2012 solely for the purpose of winding up its affairs.
...
11. During the evidentiary hearing, Marc Vianello testified on behalf of Finch. While stating that additional investigation of discovery was necessary to determine a more exact value, Mr. Vianello testified that the minimum liquidation equity of the Partnership was $412,435.56 as of July 31, 2012. However, Mr. Vianello acknowledged that he had previously testified on Finch's behalf in his marital dissolution case. In that matter, Mr. Vianello opined in 2012 that the value of the Partnership was $1,038.75. In addition, Mr. Vianello acknowledged that he has known and worked for Finch since 1993. For these reasons, the Court does not find Mr. Vianello's testimony to be as credible as Daniel J. Welsh.
12. During the evidentiary hearing, Bret A. Curtis, CPA, testified on behalf of Campbell. Mr. Curtis did not specifically opine or testify to a value of the Partnership. ... While finding Mr. Curtis's testimony insightful, the Court finds the accounting methodologies used by Mr. Welsh to prepare the Report to be more appropriate than those suggested by Mr. Curtis. In addition, Mr. Welsh as an unbiased third-party CPA appointed by the Court is more credible than Mr. Curtis.
...
24. ... In this case, Finch and Mr. Vianello claim that the lease obligation should not be listed as a liability as it has been paid by Campbell. Without deducting the lease obligation from the value of the Partnership, Finch and Mr. *631 Vianello contend that the Partnership has minimum liquidation equity of at least $412,436.56 almost 400 times the value claimed during the 2012 dissolution hearing. After the dissolution hearing, the court adopted Mr. Vianello's valuation of the Partnership which meant that his former spouse had a marital interest in only $519.38. Had the dissolution court adopted Finch's current valuation of the Partnership, Finch's former spouse would have had a marital interest in at least $206,218.28, a finding that would have adversely affected Finch with respect to the marital property distribution. For this reason, the Court finds Finch's position regarding the Partnership lease obligation inequitable.
The court made the following Conclusions of Law:
While the Court agrees with the accounting principles utilized by Mr. Welsh in his Report, the Court finds it inequitable not to deduct the full value of the Lease as a liability of the Partnership as Finch successfully advocated in his marital dissolution trial. An action for accounting is an action in equity. Bruner v Workman Oil Co. , 78 S.W.3d 801, 805 (Mo. Ct. App. 2002). A court in equity shall not aid a party with "unclean hands." City of Kan. City v. New York-Kan. Bldg. Assocs. , L.P., 96 S.W.3d 846, 862 (Mo. Ct. App. 2002). "A party participates in inequitable activity regarding the very issue for which it seeks relief will be barred by its own misconduct from receiving the relief." Id. "[N]o principle of equity is better settled than the maxim that he who seeks equity must do equity." Sebree v. Rosen , 374 S.W.2d 132, 138 (Mo. 1964). Courts of equity apply this maxim by "granting relief on such conditions as are just and proper and as the exigencies of the situation demand." Id. Stated another way, he who is granted a benefit should bear the burden of such benefit. Gibson v. Kansas City Refining Co. , 32 F.2d 658, 665 (8th Cir. 1929).
To his great financial benefit, this Court granted Finch's request in his marital dissolution case to deduct the full value of the Lease as a liability of the Partnership in the amount of $203,246.01. It would be inequitable for the Court to rule contrary in this case entitling Finch to a benefit that he did not burden in his marital dissolution. For this reason, the entire value of the Lease as advocated by Finch in his marital dissolution proceeding shall be deducted from the equitable value of the Partnership.
...
In addition, the Court finds it is inequitable to benefit Finch by increasing the equitable value of the Partnership with the account receivable from the [V Receivable] matter. ... [T]o his financial benefit Finch did not include the value of the [V Receivable] in the assets or equity of the Partnership during his marital dissolution case. Finch should not be granted the benefit of increasing the equity value of the Partnership with the [V Receivable] in this case when he did not suffer the financial burden of this increased value in his marital dissolution case. Gibson , 32 F.2d at 665. While the Court finds that the [V Receivable] should be included as an asset and value of the Partnership, the Court also finds that it is inequitable to convey this benefit to Finch when he did not incur the burden of this benefit in his marital dissolution. Therefore, the total adjusted equity of the Partnership ($218,684.42) shall be reduced by the value of the [V Receivable] or $96,455.13. ... After this adjustment the total equity of the Partnership is calculated as $122,229.29.
*632 However, Campbell should not be prevented from collecting his share of the [V Receivable] because Finch did not incur the burden of this invoice in his marital dissolution. The total [V Receivable] for the Partnership is $96,455.13. ... [T]he Court has found that Finch and Campbell are 50/50 partners in the Partnership. Therefore, Campbell's share of this account receivable would be $48,227.57.
Finch and Campbell are each entitled to 50% of the equitable value of the Partnership as found above ($122,229.29) or $61,114.64. Because Campbell retained all the assets of the Partnership (excluding the [V Receivable] ), Campbell must compensate Finch for his share of the equity of the Partnership. Subtracting Campbell's share of the [V Receivable] ($48,227.57) from Finch's share of the equity of the Partnership ($61,114.64) reduces the compensation paid by Campbell to Finch to $12,887.07. Because Campbell received a credit of his share of the [V Receivable], Finch is entitled to the entire $30,548.57 collected from [the V Receivable] since this litigation began and deposited with the Court. In addition, to the extent any amount of the remaining $65,906.56 [V Receivable] is collected, Finch shall retain those funds.
The trial court refused to allow Finch to use the lease obligation and V Receivable to his benefit during his dissolution trial and then use them the opposite way, also to his benefit, during the accounting for the partnership. "[T]here is ample case law to support the contention that parties are not allowed to take clearly inconsistent positions in differing lawsuits." In re Contest of Primary Election Candidacy of Fletcher , 337 S.W.3d 137, 145 (Mo. App. W.D. 2011). "Missouri courts in particular have consistently refused to allow litigants to take contrary positions in separate proceedings to ensure the integrity of the judicial process." Id. at 146.
Finch argues that much of the misinformation and lack of information in his dissolution trial was Campbell's fault. He says Campbell would not provide requested information. Finch says in his brief: "One of the reasons Finch was attempting to obtain information about the assets and collections of Finch & Campbell was to provide that information to his wife's attorneys." He says he "did not know of substantial F&C collections received and kept by Campbell after September 1, 2012, because Campbell had withheld that information."
While Finch may not have known how much money owed under the accounts receivable was actually collected, he certainly knew how much money was owed. The accounts receivable being collected were for work Finch performed. Finch had not billed anything under the V Receivable prior to August 2012. He prepared a bill for the V Receivable in August 2014 at the request of Special Master Welsh. That bill reflected a balance due of $96,455.13. The trial court noted that Finch knew about this asset, but did not prepare the bill or disclose the amount owed in his dissolution trial.
Finch also argues that the trial court mistakenly found that Finch represented the lease obligation to be $203,246.01 in his dissolution trial. Instead, he says the lease obligation was listed as $173,455.75 in his marital dissolution. In his dissolution, Finch deducted the lease obligation and the firm's overhead for the month of August 2012. That amount was the $203,246.01 identified by the trial court in this case. The trial court found that Finch could not deduct that sum in his marital dissolution and argue against its deduction in the accounting. It did not inflate the lease obligation.
*633 He also claims that he listed the V Receivable as an asset of $20,000 in his marital dissolution trial. He says the trial court erred in finding that he omitted it entirely. Regardless of that finding, the trial court used the number identified by Finch himself. Once requested to do so by Special Master Welsh in August 2014, Finch prepared a bill showing a balance due with respect to the V Receivable of $96,455.13. That is the number the court used.
Once a trial court finds the existence of a partnership, it must proceed to the accounting stage. King , 257 S.W.3d at 183-84. The trial court must complete the accounting even when the task is daunting or when there are inadequate records. Id. at 184. When one party is at fault for poor records or procedure, such as clients who have not yet been billed for work that was completed years prior, the trial court has "discretion to resolve any doubts or ambiguities as to the partnership accounting against" the wrongdoer. Id. "[T]he trial court is capable of deciding whether the evidence presented at trial provides a reasonable basis for an equitable adjustment of the partnership." Id. If "the record provides sufficient information from which the trial court can assess the weight and credibility of the evidence presented, and establish a reasonable basis for an equitable adjustment of the partnership," then the trial court needs to do so. Id.
The record provided such a reasonable basis in this case. The trial court used its equitable powers to complete the accounting process and divide the partnership. Finch makes several arguments about why the unclean hands doctrine should not be applied to him. Beyond unclean hands, however, the trial court was unwilling to allow Finch to take contradictory positions in two different legal proceedings, all to his benefit. The trial court's resolution of these issues was fair and within the trial court's equitable discretion.
Finch also argues that Campbell collected monies on behalf of Finch & Campbell that he did not disclose to Special Master Welsh. Finch first raised this issue after the jury trial, at the post trial hearing in July 2016. The trial court denied Finch's request, finding that "Finch was well aware of these accounts long before the accounting and jury trials and that he had the full opportunity to conduct pre-trial discovery on these matters." Yet, he "waited until the jury trial was concluded to engage Welsh in these issues post-trial." "Courts cannot be expected to reopen evidence when a party had an ample opportunity to present evidence on an issue but later had a change of heart regarding what evidence should have been presented." Handy v. Handy , 338 S.W.3d 852, 858 (Mo. App. W.D. 2011).
The point is denied.
Campbell's Point I
In his first point on appeal, Campbell says the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict on Finch's breach of fiduciary duty claim against Campbell. He claims Finch's accounting claims were fully adjudicated in equity and reduced to judgment in the First Judgment. Campbell argues that complex partnership accountings must be completed before any law claims and are exclusively equitable claims in Missouri.
Campbell says in his brief that while "the jury trial on Finch's Count 4 was ostensibly for breach of fiduciary duty, the only evidence presented for damages was accounting evidence of the value of Finch's 50% net equity interest in F&C that had been earlier presented and ruled upon in the accounting trial." He claims that the jury trial was a re-trial of his accounting *634 claims. Campbell cites an extensive portion of transcript and then states:
In this exchange, the trial Court's legal conclusions were as follows: 1. Finch would be allowed to have a jury trial for a second determination of the value of his 50% regardless of the prior accounting Judgment in equity; 2. the damages for Finch's breach of fiduciary duty claims would be the jury's decision of how the assets of F&C were to be split; 3. the jury would not be told anything about the prior accounting and the findings of the trial Court; and 4. that any jury verdict would be merged with the trial Court's previous valuation (which didn't happen). These conclusions (and results) are at variance with Missouri law.
He claims that Finch is not entitled to have two determinations made of the losses and profits of a partnership.
"Ordinarily, under Missouri law, an action at law between partners will not lie until an accounting results in the striking of a balance." Warren v. Warren , 784 S.W.2d 247, 252 (Mo. App. W.D. 1989). The valuation of partnership interests are in equity, not law. Zickel v. Knell , 357 Mo. 678, 684, 210 S.W.2d 59, 62 (Mo. 1948). "The purpose of an award of damages is to make the injured person whole by money compensation." Kincaid Enterprises, Inc. v. Porter , 812 S.W.2d 892, 900 (Mo. App. W.D. 1991). "An injury arises when the legal right of the person is violated." Id. "A single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery." Id. "The plaintiff, however, may not be made more than whole or receive more than one full recovery for the same harm." Id.
The jury found in favor of Finch on Finch's claim for breach of fiduciary duty. The jury instructions required the jury to find that Campbell denied Finch access to the partnership office, office supplies, records, and/or profits. Finch's claim for breach of fiduciary duty sought to recover the value of the partnership he was denied when Campbell locked him out. Finch's proffered exhibits identified assets of the partnership to which he determined he was entitled. The jury was asked to determine the value of Finch's share of the partnership. This is the exact same thing the trial court determined during the accounting phase.
Finch, in contrast, focuses on Campbell's breach of fiduciary duty as determined by the jury. He claims that the trial court took Finch's alleged misconduct into account in the accounting phase but did not similarly consider Campbell's misconduct in locking Finch out and withholding information from Finch. Finch cites portions of the transcript where the trial court claimed that breaches of fiduciary duty were irrelevant in the accounting phase because the accounting phase was purely about the value of the partnership. Finch complains that despite those statements, the trial court nonetheless looked at Finch's behavior and adjusted the value of the partnership without similarly looking at Campbell's behavior.
Finch also says that the accounting phase explicitly only considered the value of the law firm as of August 1, 2012. It did not consider Campbell's misconduct after that date or monies received by Campbell on behalf of Finch & Campbell after that date when Campbell was winding up the partnership. Thus, the jury was not considering the exact same thing that was litigated during the accounting phase.
Finch is the party who requested the trial and accounting in equity. In its judgment, the court found that Campbell retained all the partnership assets and thus must compensate Finch for Finch's 50% share. Campbell's breach of fiduciary duty *635 did not change the value of the partnership in any way. The trial court determined the value of the partnership, including the assets that Campbell kept from Finch. It then gave Finch his share.
Finch was not entitled to have the jury also determine the value of his share of the partnership. The point is granted. Because of the resolution of Campbell's first point, this court need not address his other four points on appeal.
Conclusion
The judgment is reversed in part with directions to set aside the verdict in Finch's favor in the amount of $150,000. It is affirmed as to all other aspects.
All concur.

Much of this court's statement of facts is quoted directly from the trial court findings in the various judgments and orders entered throughout the course of this litigation.