

# In the Missouri Court of Appeals
## Western District

STEPHEN W. HOLADAY, P.C., and )
STEPHEN W. HOLADAY, )
                Appellants, )      WD82792
v. )
                          )
TIEMAN, SPENCER & HICKS, L.L.C., )     **FILED**: July 7, 2020
                Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
### THE HONORABLE ROGER M. PROKES, JUDGE

### BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
### CYNTHIA L. MARTIN AND THOMAS N. CHAPMAN, JUDGES

Stephen W. Holaday and Stephen W. Holaday, P.C. (collectively, "Appellants")

appeal the circuit court's judgment awarding Tieman, Spencer, & Hicks, LLC,

("Respondent") damages in the amount of $427,777.77 for Holaday's breach of fiduciary

duty and tortious interference with a business expectancy.[1]  For reasons explained

herein, we affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

In July 2011, Holaday was hired as an associate attorney by the law firm of

Tieman, Spencer, Hook & Hicks.  Holaday was later invited to become a member of the

---

[1]  We will refer to Stephen W. Holaday and the related professional corporation, Stephen W. Holaday, P.C., collectively as "Appellants" because their interests are singular for purposes of this appeal.  When necessary to distinguish between Appellants, we will refer to the individual as "Holaday" and the professional corporation as "Holaday, P.C."

firm with Tieman and Spencer.  Beginning April 1, 2014, the three men practiced law together as members of the law firm Tieman, Spencer, Holaday, & Hicks ("TSHH") until Holaday's departure on September 30, 2015.  During this time, the lawyers' professional corporations, Holaday P.C., Tieman & Hicks, P.C., and John M. Spencer, P.C., were the only members of TSHH.  The firm's operating agreement provided that each member was entitled to an equal one-third share of TSHH's profits and that "[n]o Member may withdraw from the Company, except upon the written consent of fifty-one percent (51%) of all Members."

On April 11, 2015, "John Doe"[2] was seriously injured in a motorcycle crash. Holaday met with Doe to discuss legal representation.  During this meeting, Doe informed Holaday that the crash occurred after a vehicle driven by an intoxicated minor attempted an illegal U-turn, which placed the driver's vehicle directly in the path of Doe's motorcycle.  On April 21, 2015, Doe signed a contingency fee agreement with Holaday and TSHH.  The agreement stated that Doe would pay Holaday compensation equal to 38% of any sum received.  Holaday contacted State Farm and learned, on or about May 6, 2015, that the minor driver had an insurance policy with a coverage limit of $250,000 and an umbrella policy that provided for an additional $1,000,000 in coverage.

On July 6, 2015, "Frank Smith" was severely injured after he was sucked through a 140-foot drainage tube while assisting a friend on the friend's farm.  Smith's arm was severed "about three-fourths of the way off," and he needed "multiple surgeries in a very short amount of time[.]"   Smith was in the hospital for eighteen days, and Holaday went to his house for a consultation about a week after his release.  During that meeting,

---

[2] We will use pseudonyms to respect the privacy of law firm clients whose names are not material to the issues on appeal.

2

Smith and his wife told Holaday that the farm owner had an insurance policy with a $1,000,000 coverage limit. The Smiths signed a contingency fee agreement with Holaday and TSHH on August 5, 2015. The agreement stated that the Smiths would pay Holaday compensation equal to 33.3% of any sum received.

In July 2015, and after Holaday had substantially completed his investigation into Doe's claim for damages, Holaday proposed that TSHH adopt a different fee-allocation system that was not based on each member's one-third interest in the law firm. The new system would more closely track overall member fee origination and reward members based on their relative productivity. Holaday believed this would result in his receiving more of the fees from the contingency cases because he was ultimately responsible for stewarding those cases toward completion. When Spencer and Tieman rejected the proposal, Holaday announced his intention to withdraw from TSHH.

On September 22, 2015, Spencer and Holaday met to discuss the value of the fifty-eight contingency fee cases being handled by Holaday and determine whether an agreement could be reached to allow Holaday to withdraw from the firm. Spencer asked Holaday questions about the cases and made notes based on Holaday's answers. Holaday told Spencer that the Doe case involved a motorcycle accident and had liability insurance limits of $50,000. In regards to the Smiths' claim, Holaday told Spencer only that it involved a third-party farm claim. Spencer asked Holaday if any of the cases had the possibility to result in a fee greater than $75,000, and Holaday stated that no such case existed.

At this same meeting, Holaday and Spencer agreed to split the anticipated contingency fees in ten specific cases, which were acknowledged in a document referred to as "the carve-out list." Any fee realized in these cases would be split

3

between Holaday, Spencer, and Tieman according to the TSHH Operating Agreement, with two-thirds of the future fees paid to the firm and one-third paid to Holaday or by some other specified division. Neither the Doe nor Smith case appeared on the carve-out list because Spencer and Tieman relied on Holaday's statement that those cases did not involve potential fees of $75,000 or more. Spencer and Tieman agreed that Holaday could contact any contingency fee client who did not appear on the carve-out list and offer his continued legal services. Spencer and Tieman agreed that they would not attempt to interfere or compete with Holaday for the clients who were not on the carve-out list.

On September 24, 2015, Holaday hand-delivered a "choice letter" to Doe and mailed the same letter to the Smiths. The letter stated that they could follow Holaday to Holaday, P.C., remain with TSHH, or procure the services of a third-party attorney. Both Doe and Smith chose Holaday's continued representation. Holaday withdrew from TSHH on September 30, 2015, and the firm changed its name to Tieman, Spencer, & Hicks, LLC.

In February 2016, Holaday made a settlement demand to State Farm on Doe's claim. In March 2016, the parties agreed to settle the claim for $1,250,000, and Doe paid the agreed upon contingency fee of $475,000 to Holaday in April 2016. Following his departure from TSHH, Holaday also settled the Smiths' claim for $500,000, and received a fee of $166,666.66. Respondent received no portion of either contingency fee.

After learning of these fee payments, Respondent filed claims in Buchanan County Circuit Court alleging that Appellants had breached their fiduciary duty to TSHH and tortiously interfered with the law firm's business expectancy from the Doe and

4

Smith cases. At the bench trial, Tieman and Spencer testified that Holaday did not disclose accurate information about the available liability insurance coverage and potential fee recovery in the Doe and Smith cases before his departure from TSHH. They further testified that the Doe and Smith cases would have been included on the carve-out list if the information had been provided during the September 22, 2015 meeting. Absent their inclusion on the carve-out list, Tieman and Spencer testified that they would not have agreed to Holaday's immediate withdrawal from TSHH and would have otherwise taken steps to protect their two-thirds interest in the future recovery of fees in the Doe and Smith cases.

Following trial, the court ruled in favor of Respondent on both claims. The court made findings that Holaday had breached the fiduciary duty he owed to Spencer, Tieman, and TSHH and that, as a direct result of the breach, those parties suffered damages. The court awarded Respondent $427,777.77 in damages, which "represent[ed] two-thirds of the fees paid to Holaday by [Doe] and [the Smiths]."

The court also found that Holaday tortiously interfered with Respondent's business expectancy, based on his "intentional non-disclosure and misrepresentation of material facts" relating to the value of the contingency fee contracts with Doe and the Smiths. The court concluded that the actual damages sustained by Respondent as a result of the tortious interference was $427,777.77. The court entered judgment against Appellants on both claims for a single recovery of $427,777.77. Holaday and Holaday, P.C., appeal.

## STANDARD OF REVIEW

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of

5

the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We pay deference to the factual determinations of the circuit court, but the court's legal conclusions and application of law to fact are reviewed *de novo*. *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013). Our deference on factual issues requires that we view the evidence in the light most favorable to the judgment and defer to the circuit court's determinations concerning credibility, *Ivie*, 439 S.W.3d at 200, "because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012) (citation omitted). Additionally, the circuit court "is free to believe or disbelieve all, part, or none of the testimony of any witness." *Shaw v. Shaw*, 413 S.W.3d 332, 334 (Mo. App. 2013).

## ANALYSIS

In Points I and II, Appellants contend that the circuit court erred in awarding damages to Respondent for its counterclaim alleging breach of fiduciary duty and tortious interference because Rule 4–1.5(e) prevents the splitting of any fees between attorneys who are not members of the same firm unless certain prerequisites are established. Specifically, Holaday alleges that Rule 4–1.5(e) prohibits the splitting of fees with Respondent because: (1) "the [Doe] and [Smith] contingency fees were earned by and paid to Holaday after Holaday's withdrawal from TSHH;" (2) "no attorney at [Respondent] worked on, or assumed joint responsibility for, the [Doe] or [Smith] cases after Holaday withdrew from TSHH;" (3) "neither [Doe] nor the [Smiths] agreed that any attorney at [Respondent] could work on or be responsible for their cases after

6

Holaday withdrew from TSHH;" and (4) "no writing existed confirming an associations with [Respondent] or a division of fees in the [Doe] or [Smith] cases."

Rule 4–1.5(e) states:

A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

(2) the client agrees to the association and the agreement is confirmed in writing; and

(3) the total fee is reasonable.

"The rules of professional conduct have the force and effect of judicial decision. Accordingly, Rule 4–1.5 has the force and effect of law in Missouri." *Law Offices of Gary Green, P.C. v. Morrissey*, 210 S.W.3d 421, 425 (Mo. App. 2006) (citation omitted). "[A]n agreement to share attorney fees that does not comply with Rule 4–1.5(e) is unenforceable." *Id.* (citation omitted). "Accordingly, to state a cause of action for violation of a fee splitting agreement, a plaintiff must plead facts in its petition showing that the agreement complies with Rule 4–1.5(e)." *Id.*

Respondent's claim does not state a cause of action for a violation of a fee splitting agreement but, rather, a breach of fiduciary duty and a tortious interference with a business expectancy. The allegations of deception and non-disclosure place this case in a different posture than most situations arising under Rule 4–1.5(e). Moreover, an official comment to Rule 4–1.5 makes it clear that the rule should not be applied in this case. Comment 8 states, "Rule 4–1.5(e) does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm." This comment is particularly relevant under the facts of this case where

7

the departing attorney did not provide accurate information about the potential value of fees to be received for contingent contracts in existence before the law firm was disbanded.

Although the calculation of the damages incurred from Holaday's breach of a fiduciary duty relates to fees he ultimately received, those damages for deception and non-disclosure are not a "division" of fees as contemplated by Rule 4–1.5(e).  It is beyond doubt that "[c]lients are not merchandise. They cannot be bought, sold, or traded. The attorney-client relationship is personal and confidential, and the client's choice of attorneys in civil cases is near absolute."  *Matter of Cupples*, 952 S.W.2d 226, 234 (Mo. banc 1997).  These foundational truths, however, do not give partners carte blanche to violate the fiduciary duties they owe one another.  *See id.* at 235.  In summarizing a portion of these duties, the Missouri Supreme Court stated:

> Prior to withdrawal, lawyers within a firm have a duty to treat each other fairly and honestly and to put the interests of the law firm regarding firm business before their individual interests. The lawyer may not compete with the firm for business opportunities. Each lawyer has a duty to the firm to represent firm clients diligently, competently, and zealously.

*Id.* at 236.  "In the context of a withdrawing lawyer, these duties have been applied to lawyers who solicit clients before withdrawing from the firm, who withhold business opportunities from the partnership, and who secrete files from the firm."  *Id.*

Perhaps most important to the issue raised in Points I and II is the Supreme Court's recognition that a violation of an attorney's "fiduciary duty to his firm may give rise to civil liability" as well as disciplinary liability.  *Id.*  Here, the circuit court determined that Holaday's conduct gave rise to civil liability independent of the fee division. Therefore, the circuit court did not err in awarding damages to Respondent without regard for the provisions of Rule 4–1.5(e).  Points I and II are denied.

8

In Points III and IV, Appellants contend the circuit court erred in awarding Respondent damages equal to two-thirds of the Doe and Smith contingency fees because it arbitrarily concluded that two-thirds of the fees paid from those cases was the reasonable value of the services provided by TSHH prior to Holaday's withdrawing from the firm.

"The purpose of an award of damages is to make the injured person whole by money compensation." *Finch v. Campbell*, 541 S.W.3d 616, 634 (Mo. App. 2017) (citation omitted). "An injury arises when the legal right of the person is violated." *Id.* (citation omitted). Here, the court awarded a damage amount equal to two-thirds of the ultimately realized fee. This award was based on evidence indicating that Holaday placed his self-interest above his duty of honesty to TSHH by misrepresenting and concealing the potential value of the Doe and Smith cases. Spencer and Tieman testified that, if Holaday had provided accurate information, they would have placed those cases on the carve-out list to protect their two-thirds interest in any future recovery. They further testified that they would not have agreed to Holaday's withdrawal from the firm if he refused to include the two cases on the carve-out list. The court relied on this testimony in determining that Holaday's breach of his fiduciary duty caused TSHH to relinquish its rights under the contingency fee contracts with Doe and the Smiths, as well as its interest in recovering two-thirds of the fees recovered.

Holaday is correct that "[f]ees are not owned, they are earned." *Risjord v. Lewis*, 987 S.W.2d 403, 406 (Mo. App. 1999). It is also true that, in the majority of cases involving the dissolution of a firm or the departure of an attorney prior to the contingency contract being realized, the recovery of the discharged attorney is limited to the reasonable value of the services previously rendered. *See id.*; *see also Welman v.*

*Parker*, 328 S.W.3d 451, 458 (Mo. App. 2010). Respondent, however, does not seek to recover fees from Doe or the Smiths nor assert a right to a fee for its individual labor; instead, the claim alleged, and the court determined, that Holaday breached the fiduciary duty *he owed the firm* by virtue of his relationship with Tieman and Spencer and the related professional corporations. The breach distinguishes this appeal from the issues presented by *Risjord* and *Welman*, as neither case involved a credible assertion that one partner had breached his or her fiduciary duties as formulated by *Cupples*. *See Risjord*, 987 S.W.2d at 404-05; *see also Welman*, 328 S.W.3d at 453-54.

Here, the court determined that an award of $427,777.77 was the reasonable and necessary amount to make Respondent whole for Holaday's breach of fiduciary duty in failing to disclose information about the potential value of the contingent fees in the Doe and Smith cases. Any issue as to whether the damage amount is an accurate representation of the reasonable value of the work completed by Respondent prior to Holaday's departure is immaterial, because Respondent's claim is not one for quantum meruit but for breach of fiduciary duty. Holaday does not challenge the propriety of the award on the ground that it fails to accurately represent the damages incurred by Respondent but, instead, focuses on the factors courts use to assess the reasonableness of an attorney's fee. Consequently, Holaday's reliance on the factors set forth in Rule 4–1.5(a) and our discussion in *McCoy v. The Hershewe Law Firm, P.C.*, 366 S.W.3d 586, 597 (Mo. App. 2012), misunderstands the nature of the court's award. Points III and IV are denied.

In Points V, VI, and VII Appellants raise allegations of error relating to the award of damages on Respondent's cause of action for tortious interference with a business expectancy. Respondent prevailed on two theories but only recovered one sum for the

10

damages. "A single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery." *Finch*, 541 S.W.3d at 634 (citation omitted). "The plaintiff, however, may not be made more than whole or receive more than one full recovery for the same harm." *Id.* (citation omitted). As discussed *supra*, the circuit court's award of $427,777.77 is fully and independently supported by the theory of breach of fiduciary duty. Therefore, we need not reach Points V, VI, and VII.

In Point VIII, Appellants contend that the circuit court erred in entering judgment in favor of Respondent on its counterclaim for breach of fiduciary duty because Holaday was ethically required to notify Doe and the Smiths of (1) a material change in their representation; and (2) that they had an unqualified right to terminate TSHH without cause.

While it is a well-established principle that "[c]lients are not the 'possession' of anyone, but, to the contrary, control who represent them[,]" *Cupples*, 952 S.W.2d at 234 (citation omitted), this did not allow Holaday to deal with his partners however he saw fit. To be clear, we acknowledge that Doe and the Smiths could have exercised their right to terminate TSHH without cause at any time, including at the time they actually did. *See id.* This understanding of the attorney-client relationship, however, did not excuse Holaday from the fiduciary duty that he owed Respondent. *See id.* at 235-37. Put another way, while Holaday and Respondent had an obligation to inform Doe and the Smiths of the material change in representation, and Doe and the Smiths had the right to continue with the attorney of their choosing, these facts did not excuse Holaday's then-existing breach of his fiduciary duty owed to his partners. *See id.* at 234-37; *see also* Rule 4–1.16(d). It may well be that, if Holaday had dealt in good faith with Respondent, he would have received a greater share of the Doe and Smith fees. He

11

chose, however, to engage in deception and dishonesty and must now face the consequences of that choice. Point VIII is denied.

In Point IX, Appellants contend that the circuit court misapplied the law in entering judgment in favor of Respondent on its claim for breach of fiduciary duty and tortious interference with a business expectancy because Respondent should have been judicially estopped from asserting its claim for a share of the Doe and Smith fees. Holaday asserts that Respondent had previously asserted in the disputes with another law firm and firm member:[3] (1) that failure to comply with Rule 4–1.5(e) prohibited sharing contingent fees between a withdrawing attorney and the firm; and (2) that a withdrawing attorney was entitled only to the quantum meruit value of his or her services and that any right to recovery ended on the date of the attorney's departure.

"To the extent this [c]ourt is determining the purely legal question of what factors must be shown to invoke judicial estoppel, the standard of review is *de novo*." *Vacca v. Mo. Dep't of Labor and Indus. Relations*, 575 S.W.3d 223, 230 (Mo. banc 2019). "To the extent this [c]ourt is reviewing the circuit court's discretionary application of judicial estoppel to the facts of the case, the standard of review is an abuse of discretion." *Id.* "A ruling constitutes an abuse of discretion when it is 'clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Cox v.*

---

[3] Holaday was employed with the Montee Law Firm before joining Tieman, Spencer, Hook & Hicks LLC in June 2011. After clients chose to follow Holaday, there was dispute between his new firm and the Montee Law Firm regarding the distribution of fees. The dispute was resolved through mediation in March 2012.

Tieman, Spencer, Hook, & Hicks, LLC was also involved in a contingency fee dispute with a departing member, Diane Hook, beginning in March 2014. The dispute was resolved through an arbitration proceeding, during which the firm argued that Hooks' claim required fee-splitting in violation of Rule 4–1.5(e).

12

*Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015) (quoting

*Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014)).

"[J]udicial estoppel is not a cause of action with elements that must be proven

and that are prerequisites to its application." *Id.* at 235. Rather, "it is a flexible,

equitable doctrine intended to preserve the integrity of the courts." *Id.* Indeed, "[o]ther

than finding a party took inconsistent positions, no consideration is a fixed prerequisite

to application of the doctrine." *Id*. at 225. As the *Vacca* Court made clear, courts

should consider the totality of the circumstances surrounding the party's positions and

apply judicial estoppel "to preserve the integrity of the judicial process and prevent

litigants from playing 'fast and loose' with the courts." *Id*.

Here, while Respondent may have taken seemingly contradictory positions about

the scope of Rule 4–1.5(e) and the nature of pending contingency fee cases, that does

not dispose of the issue. *See id.* The positions taken by Respondent in earlier

proceedings contained both factual and legal assertions. The Court in *Vacca* stated

that "[j]udicial estoppel applies to prevent inconsistent *factual* assertions." *Id*. at 238

(emphasis added). Here, the court did not err in refusing to apply judicial estoppel

because the facts presented in this case differ quite substantially from the previous

disputes. Neither of the previous disputes involved an allegation of professional

misconduct or a breach of an associated fiduciary duty. We find no abuse of discretion

in the court's refusal to apply judicial estoppel based on the unique factual allegations in

this case. Point IX is denied.

## CONCLUSION

We affirm the circuit court's judgment.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR